OPINION OF THE COURT
Gerard M. Weisberg, J.
This is an application for permission to file a late claim pursuant to subdivision 6 of section 10 of the Court of Claims Act.
The proposed claim alleges that on November 4, 1976, at approximately 10:30 p.m., Richard Plate (movant) suffered an attack of epileptic seizures of the grand mal type, while he was a prisoner at Ossining Correctional Facility (Ossining). The seizures lasted for approximately four hours, during which time movant was thrashing against the walls and floor of his cell, causing him to sustain various injuries. The State of New York (State) is sought to be held liable on the theory that its failure to provide movant with sufficient medication precipitated his epileptic attack and that prison guards, aware of movant’s helpless condition during the attack, negligently and/or intentionally failed to render any assistance to him. In particular, the claim alleges that other inmates called to the correction officers on duty to get a doctor, and that these requests were ignored.
Subdivision 3 of section 10 of the Court of Claims Act provides in substance that a claim or notice of intention to file a claim to recover damages for personal injury caused by the tort of a State officer or employee must be filed within 90 days after the claim accrues. This claim accrued on November 4, 1976. A claim or notice of intention to file a claim should therefore have been filed on or before February 2, 1977. Having failed to comply with these statutory requirements, movant would have this court exercise its discretion in permitting a late filing pursuant to subdivision 6 of section 10 of the Court of Claims Act, which provides, in part, as follows: "In determining whether to permit the filing of a claim pursuant to this subdivision, the court shall consider, among other *1036 factors, whether the delay in filing the claim was excusable; whether the state had notice of the essential facts constituting the claim; whether the state had an opportunity to investigate the circumstances underlying the claim; whether the claim appears to be meritorious; whether the failure to file a timely claim or notice of intention resulted in substantial prejudice to the state; and whether the claimant has any other available remedy.”
The instant motion, along with the proposed claim, was filed on October 31, 1977. The court has examined the claim and finds that it satisfies the requirements of section 11 of the Court of Claims Act in that it sets forth the time and place of the occurrence, the nature of the claim, the items of damage and the total sum demanded. Additionally, movant’s application was filed within one year of accrual, and is therefore timely with respect to all Statutes of Limitation pertaining to the causes of action alleged in the claim. (CPLR 214-a, 215; Court of Claims Act, § 10, subd 6.)
The court must weigh each factor specifically enumerated in subdivision 6 of section 10 of the Court of Claims Act, as well as any others which it deems relevant. These factors need not be found to exist conjunctively. (Sessa v State of New York, 88 Misc 2d 454, 458.) The legislative purpose in amending the late filing provisions of the Court of Claims Act was to vest broader discretion in the courts to permit late filings than previously existed, indicating a strong concern that litigants with meritorious claims be afforded their day in court. (Walach v State of New York, 91 Misc 2d 167.) The court will discuss the individual factors enumerated in subdivision 6 of section 10 of the Court of Claims Act with these principles in mind.
The first factor is whether movant’s failure to file within 90 days after accrual was excusable. Movant has proffered a number of excuses, all of which fall into two general categories: (1) those arising from the conditions of his incarceration; and (2) mental and physical disability caused by the traumatic effects of his injuries and the debilitating effects of the medication prescribed for him.
Movant’s history following the epileptic seizure of November 4, 1976 was that he was taken to the intensive care unit of Phelps Memorial Hospital where he remained for seven days until November 11. He was then admitted to the Ossining Correctional Facility Hospital for 12 days until November 23, *1037 after which he was returned to population at Ossining for one week (November 23 — December 1). Movant was then transferred to Clinton Correctional Facility for one week, during which time he was locked in his cell for 23 hours per day (December 1 — December 9). Thereafter, movant was transferred to Great Meadow Correctional Facility, where during the first 30 days of his incarceration he was locked in his cell with no access of the law library (December 9 — January 10, 1977).
Movant alleges that during the foregoing period, and up until early March, 1977, he suffered from severe migraine headaches and was unable to think clearly owing to large doses of phenobarbitol and Dilatin administered to him, which caused him to be constantly drowsy and confused.
In early March movant temporarily regained his health and contacted an attorney. He was advised to contact Prisoners’ Legal Services of New York, his present counsel, and was interviewed by that organization shortly thereafter. In late March, however, movant suffered a mental breakdown which required him to be hospitalized again for six days.
Movant’s contentions, insofar as they pertain to the conditions of his incarceration, are that he was denied access to counsel and access to the law library to learn his rights for a substantial part of the 90 days.
The Attorney-General makes essentially three points: (1) that penal incarceration is not a legal disability and does not per se excuse compliance with the 90-day filing period; (2) that movant was not locked in his cell during the entire 90-day period; and (3) that no excuse is offered for the delay of approximately seven months from the time movant contacted his present counsel in March, 1977, to the filing of the instant application in October, 1977.
Sections 79 and 79-a of the Civil Rights Law, as amended by the Laws of 1973 (ch 687, §§ 1, 2), provide in substance that prisoners in State penal institutions have the right to sue. State prisoners are not persons under a "disability” such that they are excused from compliance with the filing requirements of the Court of Claims Act. (Court of Claims Act, § 10, subd 5; NY Const, art III, § 19.) It follows from this that movant’s imprisonment during the 90 days after his claim accrued does not, in and of itself, furnish a legal excuse for the delay in filing. (Kelly v State of New York, 57 AD2d 320.)
Nevertheless, in assessing the excusability of the delay, the court is not precluded from considering any kind of external *1038 constraints which would tend to prevent the prisoner from exercising his right to sue to the same degree as any other citizen. The standard of excusability is the same for prisoners as for nonprisoners. Insofar as it pertains to this case, this standard encompasses movant’s mental and physical ability to act for himself, and any impediments to action imposed from without. The court recognizes that there is great diversity in the actual conditions under which persons are confined in State penal institutions. If the conditions of a prisoner’s confinement interfere in any substantial way with his ability to effectuate his legal rights, the court must take this into consideration in judging the excusability of the delay in filing.
Movant alleges that from December 1, 1976 through January 10, 1977, he was confined to his cell for 23 hours per day, during which time he did not have an opportunity to contact an attorney or to use the law library to learn his rights. This court would regard any constraints which seriously impaired movant’s right to obtain counsel, as furnishing an excuse for his delay in filing. Even though movant is chargeable with knowledge of the filing requirements and could file a claim without the aid of an attorney (Riddle v State of New York, Ct of Claims, July 6, 1977, Moriarty, J.), as a practical matter, an attorney’s assistance might be necessary to determine the existence and nature of liability and to aid in the preparation of the claim. Persons not incarcerated are free to seek counsel, and prisoners must be placed on an equal footing with other citizens in this regard. Movant does not however state explicitly that he was denied the use of the telephone during this period, or that he was denied the right to contact Prisoners’ Legal Services of New York. It is clear that Prisoners’ Legal Services of New York interviewed movant very soon after he requested their assistance in March, 1977. The record therefore does not indicate a denial of the right to counsel.
Movant’s contention that he was denied access to the law library could, in a proper case, furnish a valid excuse, especially in conjunction with a denial of the right to counsel. As previously indicated, ignorance of the filing requirements of section 10 of the Court of Claims Act is not a valid excuse. (Landry v State of New York, 1 AD2d 934, affd 2 NY2d 927; Crane v State of New York, 29 AD2d 1001; Modern Transfer Co. v State of New York, 37 AD2d 756.) Movant’s contention goes beyond this principle, however, since he alleges not only ignorance of the law, but also an external constraint which *1039 prvented him from remedying his ignorance. However, movant’s contentions in this regard are inconsistent with the allegation that he was physically and mentally incapacitated until after the 90 days had expired. A person in such a condition would presumably be unable to use a law library.
Movant also seeks to excuse the delay in filing on the theory that he was physically and mentally incapacitated. This contention is supported by the record. Movant was hospitalized for 18 days after the occurrence. Thereafter, he continued to suffer from the effects of his injuries, experiencing severe headaches. Potent drugs were administered to him for pain and to control his epilepsy. These drugs included phenobarbitol and Dilatin, which left him in a dazed and confused state of mind. The court notes that movant suffered a mental breakdown in late March of 1977, and was again hospitalized for six days. This fact lends credibility to movant’s contention that his mental and physical disability existed during the entire 90 days following the occurrence. The court also notes that the State does not dispute any of movant’s allegations concerning his mental condition. For the purpose of a motion to permit a late filing, movant’s allegations are therefore accepted as true. (Peterson v State of New York, 84 Misc 2d 296; Miller v State of New York, Ct of Claims, Dec. 14, 1977, Lengyel, J.).
Movant’s physical and mental disability during the 90 days following the occurrence renders the delay in filing excusable. (Rugg v State of New York, 278 App Div 216; Bloom v State of New York, 5 AD2d 930; Crofut v State of New York, 279 App Div 681; Carmen v State of New York, 49 AD2d 965.) Movant need not show a complete mental or physical disability to file the claim, but must demonstrate that the delay was excusable under the totality of circumstances. (Stabile v State of New York, 12 AD2d 698; Court of Claims Act, § 10, subd 6.) Movant’s hospitalization, both immediately after the occurrence and subsequently in late March, 1977, combined with the undisputed allegations of mental and physical incapacity during the 90 days after accrual of the claim, provide a sufficient basis for excusing his delay in filing. The court also notes that movant did obtain counsel shortly after the 90 days expired, which indicates a strong desire to promptly prosecute his claim, insofar as he was able to do so.
The State is correct in saying that movant offers no justification for the seven-month delay in making the instant mo *1040 tion to permit a late filing. However the period to which the excuse must refer is the 90 days after accrual. (Walach v State of New York, 91 Misc 2d 167, supra.) A delay in moving for permission to file a late claim may be considered on the issue of prejudice, but the State has not alleged any prejudice.
The second and third factors which the court must consider are whether the State, or its appropriate subdivision had notice of the essential facts constituting the claim, and had an opportunity to investigate. After the occurrence, movant was removed from his cell by prison guards. He was treated at the prison hospital, both immediately after the occurrence and later in March, 1977. Movant alleges that numerous reports of the incident were made to the Superintendent of Ossining, including an unusual occurrence report, medical reports and various forms attendant upon a prisoner’s leaving the facility for treatment in an outside hospital. The State does not deny these allegations. It does appear that the Department of Correctional Services, which is the appropriate State agency, had adequate notice and opportunity to investigate this claim. The situation is not unlike that in Carmen v State of New York (49 AD2d 965, supra), in which the claimant was injured while working in Empire State Plaza in Albany. The court stated (p 966): "Likewise, the State had the requisite knowledge of the essential facts constituting the claim. A full report of the accident was filed by an officer of the Capitol Police force, the nurse employed in the State Capitol treated claimant and made a record of the matter, and official records of the incident were filed with the Workmen’s Compensation Board. Such being the case, the State had 'abundant notice’ to fulfill the statutory requirement (Bloom v State of New York, supra, p 931).”
The case of Phillips v State of New York (36 AD2d 679), upon which the State relies, is distinguishable. In that case the court held that where claimant was allegedly assaulted by a police officer during claimant’s arrest for intoxicated driving, the knowledge of the alleged tort-feasor was not imputable to the State. (See, also, Bommarito v State of New York, 35 AD2d 458.) In the case at bar, movant has demonstrated notice to numerous persons other than the alleged tort-feasor, including the Superintendent of Ossining, as well as other persons including prison guards and hospital personnel. The knowledge of these persons is imputable to the State. The *1041 court finds that the State did have notice and an opportunity to investigate this claim.
The fourth factor is whether the claim appears to be meritorious. In order for a claim to appear to be meritorious: (1) it must not be patently groundless, frivolous, or legally defective; and (2) the court must find, upon a consideration of the entire record, including the proposed claim and any affidavits or exhibits, that there is reasonable cause to believe that a valid cause of action exists. (Matter of Santana v New York State Thruway Auth., 92 Misc 2d 1.) The State has not urged the existence of any legal or factual defects in this claim. The nature and extent of movant’s injuries are supported by movant’s treatment in various hospitals. Movant has alleged that his seizures were precipitated by improper medical treatment and that he was intentionally neglected by prison guards during the occurrence. Movant’s attorneys state that written statements from eyewitnesses have been taken to support these allegations. The court concludes that there is substantial reason to believe that movant has a cause of action against the State.
The next factor is whether the State has been substantially prejudiced by the delay in filing. The Attorney-General does not allege any prejudice. There is no indication that any circumstance has changed which would preclude a proper defense to the claim. While the court considers that some prejudice has been suffered, merely by virtue of the lapse in time, this factor affects both sides equally, and does not meet the quantum of prejudice required by the statute. (Ebbets v State of New York, Ct of Claims, June 20, 1977, Amann, J.).
The last factor is whether movant has any other available remedy. The State and its employees are the only parties purportedly liable for movant’s injuries. The State is the only entity to which movant may realistically turn for compensation. As Judge Lengyel stated in Miller v State of New York (supra, p 7): "Although claimant may also be able to assert separate causes of action against various State employees in their individual capacities (DeVivo v Grosjean, 48 AD2d 158), such actions would likely be defended by the State and result in indemnification by the State if liability is found. (Public Officers Law, § 17.) It would appear that the interest of economy of judicial resources would be better served by permitting the present claim, and that the Court of Claims is the most appropriate forum.”
*1042 CONCLUSION
The Court has weighed the factors specifically enumerated in subdivision 6 of section 10 of the Court of Claims Act. In view of the excusability of the delay in filing, the presence of notice and opportunity to investigate the claim, the apparently meritorious nature of the claim, the lack of prejudice and the unavailability of alternative remedies, the court finds all of the specific enumerated factors favorable to movant’s application. Accordingly, the motion is granted.