87 N.Y.2d 574 (1996)
663 N.E.2d 890
640 N.Y.S.2d 849
A.J. Temple Marble & Tile, Inc., Respondent,
v.
Union Carbide Marble Care, Inc., et al., Appellants.
Court of Appeals of the State of New York.
Argued January 3, 1996
Decided February 13, 1996.
Kaufmann, Feiner, Yamin, Gildin & Robbins, New York City (David J. Kaufmann, Daniel Gildin, Susan H. Morton and William F. Cuozzi of counsel), for appellants.
Schnader, Harrison, Segal & Lewis, New York City (W. Michael Garner of counsel), for respondent.
Judges SIMONS, BELLACOSA, SMITH and CIPARICK concur with Judge LEVINE; Chief Judge KAYE concurs in result in a separate opinion in which Judge TITONE concurs.
*577 LEVINE, J.
This appeal concerns the scope of section 691 (3) of the General Business Law, which imposes joint and several liability on certain persons for fraudulent activities in connection with the registration, sale and promotion of franchises. The specific issue raised is whether that section imposes liability on the franchisor's officers, directors and other persons who directly or indirectly control the franchisor without regard to whether their actions "materially aided" the statutory violations.
In the late 1980s, Union Carbide Chemicals and Plastics (UCC & P), a wholly owned subsidiary of Union Carbide Corporation (Union Carbide), established Union Carbide Marble Care to develop and market marble cleaning and restoration franchises under the trade name MarbleLife. Plaintiff A.J. Temple Marble & Tile, Inc. purchased four new MarbleLife franchises in June 1990, but was unsuccessful in developing any of them. Following Union Carbide Marble Care's sale of the franchise business to one of its franchisees in 1993, plaintiff filed suit against Union Carbide Marble Care, UCC & P, Union *578 Carbide, and certain individual officers, directors and employees of the corporate defendants alleging that plaintiff had been induced into purchasing the franchises based on defendants' material misrepresentations and omissions.
As pertains to this appeal, plaintiff alleged that Union Carbide Marble Care had violated the antifraud provision of the New York Franchise Sales Act (see, General Business Law § 687) by fraudulently representing, inter alia, that the purchase of a MarbleLife franchise included the use of the Union Carbide trademarks and service marks and by concealing a preexisting plan to limit capital investment and abandon the franchise business if certain financial goals at various check points were not met. UCC & P, Union Carbide and the individual defendants were claimed to be jointly and severally liable for these violations under section 691 (3) of the Franchise Sales Act which imposes joint and several liability on a partner, executive officer, director or other controlling person of a franchisor, including "a person occupying a similar status or performing similar functions, and an employee of a person so liable, who materially aids in the act of [sic] transaction constituting the violation" (General Business Law § 691 [3]).
Defendants moved to dismiss various causes of action in the complaint, including the Franchise Sales Act claim as to the nonfranchisor defendants. Defendants argued that section 691 (3) imposes joint and several liability only on persons whose actions materially aid the violator and sought dismissal on the ground that the complaint failed to allege that the nonfranchisor defendants materially aided the franchisor's statutory violations. In opposing defendants' motion, plaintiff argued that the statutory phrase "materially aids" modifies only "employee" and, thus, that the other categories of named affiliated persons are presumptively vicariously liable for the statutory violations based solely on their relationship to the franchisor. Supreme Court rejected both parties' reading of the joint and several liability provision of section 691 (3) and held that the phrase "materially aids" was intended to qualify the liability of controlling persons, but not officers, directors, or employees. Based on that interpretation, Supreme Court denied the motion to dismiss the statutory cause of action as to all of the nonfranchisor defendants except two former Union Carbide Marble Care directors who had joined the company subsequent *579 to plaintiff's franchise purchase (162 Misc 2d 941).[*] The Appellate Division affirmed for the reasons stated by Supreme Court (214 AD2d 473), and subsequently granted defendants' motion for leave to appeal to this Court, certifying the following question for our review: "Was the order of this Court, which affirmed the order of the Supreme Court, properly made?" We conclude that the plain meaning of General Business Law § 691 (3) supports defendants' interpretation  that joint and several liability is imposed only on executive officers, directors, and controlling persons of the franchisor whose actions materially aid the statutory violations. Viewing the sufficiency of the complaint in light of our interpretation of the statute, we conclude that dismissal of the Franchise Sales Act claim is warranted as to all but one of the nonfranchisor defendants.
The Franchise Sales Act (General Business Law §§ 680-695) was enacted in 1980 to combat abuses that had accompanied the growth of the franchising industry and had resulted in substantial losses to New York residents (Sponsor's Mem, 1980 NY Legis Ann, at 286; Mem of Assembly Rules Comm, Bill Jacket, L 1980, ch 730; see, General Business Law § 680 [legislative findings and policy]). The Act contains comprehensive disclosure and registration requirements and an expansive antifraud provision. The Department of Law is vested with broad investigatory and enforcement powers (General Business Law §§ 688, 689, 692) and, in addition, a violation of the Act gives rise to both penal (id., § 690) and civil liability (id., § 691). Under the civil remedies provision, a person who offers or sells a franchise in violation of the Act is liable to the purchaser for damages or, where the violation is willful and material, for rescission plus interest (id., § 691 [1]). In addition to providing for a cause of action against the primary violator, the Act imposes joint and several liability on certain other persons affiliated with the franchisor (General Business Law § 691 [3]). As noted, this appeal concerns the proper interpretation of that provision, which provides in full:
"A person who directly or indirectly controls a person liable under this article, a partner in a firm so liable, a principal executive officer or director of a corporation so liable, a person occupying a similar status or performing similar functions, and an employee of a person so liable, who materially aids *580 in the act of [sic] transaction constituting the violation, is also liable jointly and severally with and to the same extent as the controlled person, partnership, corporation or employer. It shall be a defense to any action based upon such liability that the defendant did not know or could not have known by the exercise of due diligence the facts upon which the action is predicated" (General Business Law § 691 [3] [emphasis supplied]).
At issue is whether the qualifying phrase "who materially aids in the act of [sic] transaction constituting the violation" applies to all or only some of the enumerated categories of persons.
Our objective in construing a statute is to give effect to the legislative intent. Where the language of a statute is clear, it is presumed that that intent is reflected in the words chosen by the Legislature and the plain meaning they express (People v Graham, 55 N.Y.2d 144, 152; Matter of Carr v New York State Bd. of Elections, 40 N.Y.2d 556, 559; McKinney's Cons Laws of NY, Book 1, Statutes § 94). A plain reading of section 691 (3) indicates that "materially aids" refers to all of the potentially jointly and severally liable defendants: controlling persons, partners, officers, directors, and employees of the franchisor. Although the scope of this provision has received only limited treatment by the courts and commentators, others have reached a similar conclusion as to its meaning (see, Retail Software Servs. v Lashlee, 854 F.2d 18 [2d Cir] [interpreting section 691 (3) as making officers and directors jointly and severally liable if they materially aid the violation]; Dunham, Liability of Shareholders, Officers, Directors, and Employees for Franchise Law Violations, 13 Franchise LJ 101, 121 [spring 1994] [same]).
Ordinary rules of statutory construction support this interpretation as well. Where, as here, a descriptive or qualifying phrase follows a list of possible antecedents, the qualifying phrase generally refers to and modifies all of the preceding clauses (Matter of Budd v Valentine, 283 N.Y. 508, 511; Matter of New York Tel. Co. v Ferris, 257 App Div 415, affd 282 N.Y. 667; McKinney's Cons Laws of NY, Book 1, Statutes § 254; see also, People v Rosenberg, 138 N.Y. 410, 415). Because the legislative history of the Franchise Sales Act is silent as to the intended scope of joint and several liability, we interpret section 691 (3) in accordance with its plain and literal meaning (Matter of Schinasi, 277 N.Y. 252, 259 ["courts may not reject a literal construction (of a statute) unless it is evident that a literal construction does not correctly reflect the legislative intent"], rearg denied 278 N.Y. 624).
*581 We thus reject plaintiff's alternate construction of the statute, that the "materially aids" clause applies only to employees. Although the qualifying clause immediately follows the affiliated person category of employee, it is set off from that category by a comma. Common marks of punctuation are used to clarify the writer's intended meaning and thus form a valuable aid in determining legislative intent (see, McKinney's Cons Laws, Book 1, Statutes § 253). In this case, punctuation sets off the materially aids clause from all of the enumerated categories of persons, indicating that it was intended to apply to each one. Because this is a reasonable and workable construction of the statute and because there is no evidence that another meaning was intended, we are not at liberty to simply ignore the Legislature's punctuation (cf., Matter of Brooklyn El. Ry. Co., 125 N.Y. 434 [transposing comma where literal interpretation rendered amendment superfluous]).
For this same reason, Supreme Court's interpretation must be rejected. An interpretation that the "materially aids" clause refers only to controlling persons, and not to the rest of the enumerated categories of affiliated persons set forth in the statute after controlling persons but before the "materially aids" clause, simply does not comport with a plain reading of the statute.
Plaintiff contends, however, that the construction we now adopt is at odds with the Act's use of the term "person," which is defined to include the franchisor's officers, directors and controlling persons (see, General Business Law § 681 [13] [defining "person" as "an individual, corporation, partnership * * * and * * * any other person that has a substantial interest in or effectively controls such person, as well as the individual officers, directors, general partners, trustees or other individuals in control of the activities of each such person"]). The term "person" is used throughout the Act. Thus, the Attorney-General is authorized to prescribe by regulation the "persons" affiliated with the franchisor who are to be identified in the registered offering prospectus (id., § 683 [2] [d]; see, 13 NYCRR 200.3 [b] [4] [definition of principal]; 200.4 [c] [2], [3] [requiring disclosure of identity, business experience, and litigation status of designated affiliated persons]).
The term "person" is also used to define the proscribed conduct in connection with franchising (see, e.g., General Business *582 Law § 683 [1] ["It shall be unlawful and prohibited for any person to offer to sell or sell * * * any [unregistered] franchise"]; § 687 [1] ["It is unlawful for any person to make any untrue statement * * * or wilfully to omit * * * any material fact" in the offering prospectus]), and to indicate against whom criminal and civil penalties may be imposed (e.g., General Business Law § 689 [1] [authorizing actions by the Department of Law for an injunction and penalties against "any person" who violates the Act and "any other person * * * participating in" the proscribed conduct]; § 690 ["Any person who knowingly violates any of the provisions of this article or any rule or regulation issued thereunder shall be guilty of a class A misdemeanor"]). Likewise, if one of the individuals or entities defined as a person directly participates in an unlawful offer or sale, there is civil liability for the purchaser's resulting damages under section 691 (1).
In all of the foregoing ways, the Act directly imposes sanctions upon the personal commission of statutory violations by corporate officers, directors, and controlling persons. Additionally, however, where a statutorily defined person affiliated with the franchisor does not personally violate the Act by participating in the fraudulent franchise offer or sale, he or she may still be held liable for the statutory violations of others if his or her actions materially aided the violation (see, General Business Law § 691 [3]; see generally, Dunham, Liability of Shareholders, Officers, Directors, and Employees for Franchise Law Violations, op. cit. [distinguishing direct and indirect statutory liability of officers and directors]).
There is thus no conflict in these provisions; instead, the provisions imposing direct and indirect liability complement one another in forming a cohesive basis for imposing liability on all of the individuals and entities potentially involved in an unlawful or fraudulent transaction. In contrast, under plaintiff's interpretation of the section, whereby presumptive vicarious liability is imposed merely on the basis of a relationship to the franchisor without regard to direct participation in the selling or the giving of material aid, section 691 (1)  the provision imposing liability on affiliated "persons" for their own statutory violations in selling or offering a franchise  becomes redundant. Indeed, one would expect that provision to describe only the franchisor's liability since, under plaintiff's reading of the statute, every affiliated officer, director, and controlling person would be vicariously liable under section 691 (3) whether or not that affiliated individual or entity participated *583 in or materially aided the unlawful sale. Our interpretation of the statute, on the other hand, gives full meaning to the words used in both subdivisions governing the imposition of civil liability.
Finally, we note that the parties' reliance on the case law from other jurisdictions is of no assistance in interpreting section 691 (3) because the wording and punctuation of those statutes differs from our own. Moreover, other jurisdictions have interpreted similarly worded statutes in contradictory fashion (compare, Eastwood v Froehlich, 60 Cal App 3d 523, 131 Cal Rptr 577 [materially aids clause modifies only employees], with Vukusich v Comprehensive Accounting Corp., 150 Ill App 3d 634, 501 NE2d 1332 [materially aids clause applies to all listed persons]).
Furthermore, while we recognize that one impetus for the enactment of the Franchise Sales Act was the fact that existing Federal and State securities laws could not be used to combat franchise sales fraud (see, Hearing on 1980 NY Senate Bill S 5320, Apr. 15, 1980, at 14-15), we do not agree with the California courts that have interpreted an analogous franchise statute as imposing presumptive liability on all affiliated persons except employees based on the theory that the standard for secondary liability under their State's franchise act was intended to replicate the Federal securities law standard (see, e.g., Eastwood v Froehlich, 60 Cal App 3d 523, 131 Cal Rptr 577, supra).
The Federal provisions imposing joint and several liability for securities fraud are worded much more narrowly than section 691 (3); they impose liability only on controlling persons and do not list specific categories of potentially liable persons by title as does section 691 (3) (see, 15 USC § 77o [imposing joint and several liability on "(e)very person who * * * controls any person liable" under the Act] [1933 Securities Act]; 15 USC § 78t [a] [imposing joint and several liability on "(e)very person who, directly or indirectly, controls any person liable under any provision of this title"] [1934 Securities Act]). Thus, secondary liability is imposed under those statutes only on affiliated persons who are in a position to directly supervise or influence the violator (see, e.g., Farley v Henson, 11 F.3d 827, 835; Arthur Children's Trust v Keim, 994 F.2d 1390, 1396-1397), which is an intensely factual inquiry precluding the automatic imposition of liability on every director and parent corporation (see, Arthur Children's Trust v Keim, 994 F2d, at 1396, supra).
To rely on general references to the Federal securities law as evidence that the Legislature intended to impose joint and several *584 liability on all named affiliated persons without regard to whether their conduct materially aided the violation, would therefore have the effect of significantly expanding the Federal standard, since, unlike the Federal securities laws controlling person provisions, the Franchise Sales Act would then impose presumptive liability for the franchisor's violations on all directors, officers, parent companies and other affiliated persons irrespective of whether they were in a position to directly control the violator. Without specific evidence that the Legislature intended to so enlarge the Federal securities law standard for joint and several liability, we decline to follow that course.
Having concluded that Supreme Court's interpretation of the statute does not comport with its plain meaning, we need not reach defendants' alternate contention that the lower courts' interpretation renders the statute unconstitutional (see, People v Felix, 58 N.Y.2d 156, 161, appeal dismissed 464 US 802).
The final issue is whether the complaint sufficiently pleads facts showing that the nonfranchisor defendants materially aided the franchisor's allegedly fraudulent acts. We find the allegations of the complaint sufficient in this respect only as to defendant Richard Broockmann, president of the Union Carbide Marble Care board of directors. The complaint alleges that Broockmann developed the MarbleLife business plan with its limit on capital investment and financial check points, that he directly participated in the unlawful franchise sales, and that he was responsible for misrepresentations in the solicitation materials. If true, these allegations unambiguously indicate that Broockmann materially aided the misrepresentations and omissions complained of. However, as to UCC & P, Union Carbide and John Clerico, the complaint alleges no more than their relationship to the franchisor, that is, their position as a controlling person or director and officer. Nor is the conclusory statement that Union Carbide Marble Care Chair Gerald Ehrens "participated in and directed the unlawful conduct" a sufficient factual allegation that his actions materially aided the franchisor's violations. Similarly deficient is the allegation that Union Carbide Chair R.D. Kennedy approved of Broockmann's business plan, since it is not the business plan itself that is alleged to be in violation of the statute, but defendants' concealment of that plan in promoting the franchise. Thus, the complaint, insofar as it alleges that defendants Union Carbide, UCC & P, Kennedy, Ehrens, and Clerico are jointly and severally liable for the franchisor's Franchise Sales Act violations, *585 should be dismissed. That dismissal, however, should be without prejudice to plaintiff to apply at Supreme Court, if so advised, for leave to amend (CPLR 3211 [e]; see, Sanders v Schiffer, 39 N.Y.2d 727, 729).
Accordingly, the order of the Appellate Division should be modified, without costs, in accordance with the opinion herein, as so modified, affirmed, and the certified question answered in the negative.
Chief Judge KAYE (concurring).
I agree with the majority that, in light of the comma between the words "liable" and "who materially aids," a literal reading of General Business Law § 691 (3) compels the conclusion that a "controlling person" such as a partner, officer or director of a business that has violated the Franchise Sales Act is jointly and severally liable only if that person "materially aid[ed]" in the violation itself (see, majority opn at 581).
I write separately, however, to express my concern that section 691 (3), as now interpreted, imposes secondary liability on such a narrow class of individuals as to be virtually meaningless in practical application, thereby stripping the statute's private enforcement mechanism of any real impact. As we now read the statute, in order for an officer or director to be secondarily liable in a private lawsuit brought by a purchaser of a franchise, that person must have (a) directly or indirectly controlled a person liable under the statute (General Business Law § 691 [3]); (b) not have made any untrue statement of a material fact or have engaged in any device, scheme, course of business or artifice to defraud in the course of offering or selling the franchise (General Business Law § 681 [13]; §§ 687, 691 [1]); (c) yet materially aided in the act or transaction constituting the violation (General Business Law § 691 [3]) and (d) either have known or not have been negligent in not knowing that the violation took place (id.). It is hard to construct such a situation.
Unlike a lower-level employee who materially aided in a violation of the Act by providing false financial information without knowing its import, the likelihood that a high-level executive such as a director  charged with the duty of good faith and reasonable care with respect to the corporation's affairs (see, Business Corporation Law § 717)  unwittingly, yet materially, aided in a violation of the Act is slim. Few if any executives of a corporation that has violated the Franchise Sales Act, therefore, will be secondarily liable under section 691 (3): *586 they will either be primarily liable under section 687 or they will not be liable at all.
I suspect this is not what the Legislature intended. First, it seems unlikely that section 691 (3) would have been enacted to serve virtually no purpose. Second, New York's Franchise Sales Act, like other State franchise acts, was adopted in 1980 (L 1980, ch 730) to remedy the perceived gap resulting from the largely unsuccessful efforts to regulate franchise sales  which had experienced rapid growth in the American economy after World War II  under the Federal securities laws (see, e.g., Hearing on 1980 NY Senate Bill S 5320, Apr. 15, 1980, at 14-15; Rollinson, Franchise Attorney Responsibility to Franchise Purchasers, 2 J of [ABA] Forum Comm on Franchising 20, 21 [1982]; Emerson, Franchise Contract Clauses & the Franchisor's Duty of Care Toward its Franchisees, 72 NC L Rev 905, 926, n 81). California was the first State to pass such an act in 1971 (Cal Corp Code § 31000 et seq.) and the California courts have frequently noted the strong affinities between California's Franchise Investment Law and the Federal securities laws (see, e.g., Keating v Superior Ct. [Southland Corp.], 31 Cal 3d 584, 645 P2d 1192, 1199, revd on other grounds sub nom. Southland Corp. v Keating, 465 US 1; Courtney v Waring, 191 Cal App 3d 1434, 1438, 237 Cal Rptr 233; Eastwood v Froehlich, 60 Cal App 3d 523, 529, 131 Cal Rptr 577).
The language in section 691 (3) in particular  nearly identical to that of the analogous California provision except for the comma (Cal Corp Code § 31302)[*]  closely parallels the 1934 Securities Act (compare, General Business Law § 691 [3] ["A person who directly or indirectly controls a person liable under *587 this article * * * is also liable jointly and severally with and to the same extent as the controlled person"], with 15 USC § 78t [a] ["Every person who, directly or indirectly, controls any person liable under * * * this title * * * shall also be liable jointly and severally with and to the same extent as such controlled person"]). Section 691(3) and the 1933 Securities Act even include nearly identical good faith/lack of knowledge defenses (compare, General Business Law § 691 [3] ["It shall be a defense to any action * * * that the defendant did not know or could not have known by the exercise of due diligence the facts upon which the action is predicated"], with 15 USC § 77o [controlling person liable "unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist"]).
In marked contrast to section 691 (3), however, the Federal securities laws impose secondary liability on any officer or director (as opposed to merely an employee) exercising control over the primary wrongdoer who knows about the violation or who negligently fails to supervise the wrongdoer and thus stands behind the scenes and allows the violation to take place  regardless of whether the controlling person "materially aided" in the violation (see, e.g., Marbury Mgt. v Kohn, 629 F.2d 705, 715; Savino v Hutton & Co., 507 F Supp 1225, 1241-1243). Contrary to the assertions of the majority, the New York Franchise Act does not expand upon or materially differ from the governing Federal securities law standard by imposing liability on affiliated persons "irrespective of whether they were in a position to directly control the violator." (Majority opn at 584.) The language and structure of the statute in fact make clear that only partners, officers and directors who control violators of the Act or who "occupy[] a similar status or perform[] similar functions" are liable under section 691 (3) as controlling persons.
From the perspective of a plaintiff like the one here attempting to defeat a motion to dismiss at the pleading stage, there is obviously an enormous difference between requiring the allegation that an officer or director controlled another person who has violated the Act, and requiring the additional allegation that the controlling person also materially assisted in the violation itself. It thus appears that the section's now-fateful comma may have substantially diminished the Franchise Act's over-all effectiveness in combating "the sale of franchises *588 where such sale would lead to fraud" (General Business Law § 680 [2]).
Order modified, etc.
NOTES
[*] The liability of those defendants, Reed Freeman and Ralph Lutjen, is not at issue in this appeal.
[*] California Corporations Code § 31302, entitled "Liability for acts of agents" provides as follows: "Every person who directly or indirectly controls a person liable * * * every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist."

One commentator, noting that this provision is to date "the only [State] franchise statute giving rise to extensive litigation of joint and several liability," recognizes that it imposes secondary liability on officers and directors "who have no actual knowledge of the facts giving rise to a violation, but who on reasonable investigation could have learned those facts" (Dunham, Liability of Shareholders, Officers, Directors and Employees for Franchise Law Violations, 13 Franchise LJ 101, 122, 123 [1994]).