OPINION OF THE COURT
Philip J. Patti, J.
Claimant alleges that on or about January 25, 2001, his *598 personal property was lost as a result of the negligence of employees of the Department of Correctional Services (DOCS) when he was being transferred from one correctional facility to another. He filed an institutional claim for the missing property and, after one missing bag was located and some of the property recovered, a second institutional claim was filed on February 16, 2001. The total damages sought are $1,230.28. Claimant rejected a settlement offer of $171.08.
A notice of intention to file a claim was served upon the Attorney General on April 9, 2001. The instant claim, served and filed in August 2001, alleges that it was timely “as it is filed within 120 days [of] the date the Property Claim was denied by the DOCS on or about June 20, 2001” (claim ]j 19).
Defendant raised the affirmative defense of lack of personal jurisdiction based on improper service of the claim by regular mail and not by certified mail, return receipt requested, as required by Court of Claims Act § 11.[1] Tacitly acknowledging this defect, claimant sought permission pursuant to section 10 (8) (a) to have the notice of intention deemed the claim. That relief was denied because at the time his notice of intention was served, a claim would have been premature, as claimant had not yet exhausted his administrative remedies (decision and order, Motion No. M-64593, filed May 17, 2002; but see, Gloster v State of New York, Ct Cl, June 5, 2002, Claim No. 103662, Motion No. M-64877, MacLaw UID No. 2002-011-550, McNamara, J.[2] [holding that section 10 (8) relief is no longer available with respect to inmate property loss claims, because section 10 (9) contains no provision for use of a notice of intention]).
Claimant then sought “reconsideration” of that ruling, arguing, inter alia, that it would have been impossible for him to exhaust his administrative remedies and still be able to institute his lawsuit within 90 days of the date of the property loss. This argument was unavailing because claims for property losses by inmates are no longer measured from the date of loss, but rather within a 120-day period commencing upon exhaustion of institutional remedies (decision and order, Motion No. M-65286, filed Sept. 26, 2002).
In the instant motion, claimant seeks to voluntarily withdraw his claim and permission to file a late claim pursuant to Court *599 of Claims Act § 10 (6). Claimant is under the apparent impression that he must first withdraw the existing claim in order to obtain late claim relief for the same cause of action. That is not the case because, while the claim was timely filed, service was concededly improper and it was therefore subject to automatic dismissal. Accordingly, Claim No. 104699 is deemed withdrawn (see, CPLR 3217).
I will now consider the motion for permission to file a late claim. Claimant exhausted his administrative remedies on June 20, 2001. The claim, therefore, should have been filed and properly served by October 18, 2001.
A motion under section 10 (6) must be brought during the time period when “a like action against a citizen” would not be barred by the applicable CPLR article 2 statute of limitations. Bailment claims must be commenced within three years (CPLR 214), and accrue “when the bailor demands the property and the bailee refuses to deliver it” (Heede Hoist & Mach. Co. v Bayview Towers Apts., 74 AD2d 598, 598 [1980]). Since the bailment claim here accrued on January 25, 2001, the instant motion is timely.
Defendant argues, however, that the remedy sought, to wit, a late claim pursuant to section 10 (6), is no longer available with respect to bailment claims commenced by inmates. In 1999, the Legislature enacted amendments that placed new requirements on these particular claims (L 1999, ch 412, part D, § 2), with the applicable time limitation set forth in section 10 (9). Meanwhile, section 10 (6) expressly limits late claim relief to those claimants who fail to initiate a claim “as provided in the foregoing subdivisions, within the time limited therein” (emphasis supplied). Subdivision (9), of course, is not “foregoing” in relation to subdivision (6), but rather follows it.
This argument was considered in McCann v State of New York (194 Misc 2d 340, 345 [2002]), where the court held that late claim relief is not available for inmate property loss claims, reasoning as follows:
“If this court were to hold that, despite the express language of section 10 (6), the remedy it provides is also available to claims governed by section 10 (9), that ruling would, in effect, negate the Legislature’s decision to place the new subdivision after, rather than before, section 10 (6). Such a ruling would also contradict the unambiguous language of the statute.”
There is no dispute that, by its express language, section 10 (6) *600 relief is made available for claimants who failed to meet time limitations contained in the “foregoing” subdivisions. But query whether the Legislature truly “decided” or intended to withdraw the court’s authority to grant late claim relief for this single category of claims when it placed the new subdivision (9) “after, rather than before,” subdivision (6).
The Legislature certainly intended some substantial changes in this 1999 amendment: inmates would now be required to exhaust institutional administrative remedies before commencing a legal action against the State for property losses, the time period for filing and serving such claims was changed to 120 days, and any reference to service of a notice of intention with connection to these claims was omitted (see, Gloster v State of New York, supra). There is nothing, however, in the language of the amendment, the Bill Jacket, or other legislative history to suggest or imply any intention to exclude this single category of claims from the late claim relief available through section 10 (6), nor is such a restriction required by logic.
Interestingly, an earlier amendment to section 10 created similar confusion, and its resolution is instructive. In 1995, the Legislature abolished the requirement that notices of intention had to be filed with the Court of Claims (L 1995, ch 466, § 1), still requiring service upon the Attorney General. The word “filed” was removed from section 11 (a) and from the appropriate subdivisions of section 10, except subdivision (8) where the remedy permitting a notice of intention to be deemed a claim in certain situations remained, by its express terms, available to a “claimant who timely serves a notice of intention but who fails to timely serve or file a claim.” (Court of Claims Act § 10 [former (a)].) In Konviser v State of New York (180 Misc 2d 174 [1999]), it was concluded that, after a transition period, there would never be any claimants who fit this definition, and the amendment was, in effect, a repeal by implication of section 10 (8). While recognizing that the continued presence of subdivision (8) within the statute could well constitute a “classic trap for the unwary,” the court took the position that it is “the role of the Legislature and not the courts to clarify the language of the statute” (id. at 181).
A different conclusion was reached in Muller v State of New York (184 Misc 2d 500 [2000]), which construed the apparently inconsistent provisions in a way that gave “continuing utility to the important relief afforded by section 10 (8) (a)” and resolved the confusion “in favor of the claimant and in favor of *601 justice requiring the matter to be heard by a court” (id. at 503), a finding supported by the holding that “if the Legislature intended to totally eliminate a statutory remedy available to the State’s citizens * * * it would have expressed such an intention in a much more overt and straightforward manner” (Fox v State of New York, Claim No. 99171, M-58800, CM-58963, filed June 7, 1999, King, J.).
Ultimately, one year after Muller, the Legislature resolved the dilemma caused by the confusing retention of the words “and files” in section 10 (8), and amended section 10 again, removing that reference from subdivision (8) (L 2001, ch 205, § 2), in essence acknowledging that Muller had correctly inferred its intentions.
Section 10 (6) has also been similarly construed in connection with late claim motions asserting causes of action for wrongful death. The applicable time limitation is contained in section 10 (2), which provides that the executor or administrator of a decedent’s estate must serve a notice of intention or file and serve a claim within 90 days after the date such executor or administrator is appointed. Section 10 (2) also provides that “[i]n any event such claim shall be filed and served upon the attorney general within two years after the death of the decedent.”
When an administrator or executor fails to initiate a claim within the 90-day period after appointment, the only relief is obtaining permission to late file, a remedy that would not be available if one relies strictly on the express language of section 10 (6), where a motion must be commenced before it would be barred under the provisions of CPLR article 2. However, the statute of limitations applicable to wrongful death actions “against a citizen of the state” is not contained in article 2 of the CPLR, but instead is found in section 5-4.1 of the Estates, Powers and Trusts Law.[3] Nevertheless, motions to late file wrongful death claims are routinely permitted and often granted (see, e.g., Lichtenstein v State of New York, 252 AD2d 921 [1998]; Pagano v New York State Thruway Auth., 235 AD2d 408 [1997]; Hansen v State of New York, 135 AD2d 606 [1987]; Charbonneau v State of New York, 148 Misc 2d 891 [1990]; Matter of Santana v New York State Thruway Auth., 92 Misc *602 2d 1 [1977]; Williams v State of New York, 46 Misc 2d 724 [1965]).
This leads to a conclusion that the overall purpose and spirit of section 10 (6) must prevail over strict adherence to its express language, if the latter approach would result in rendering the remedy in a confusingly limited and piecemeal fashion. It is a fundamental principle of statutory construction that consideration must be given to “the general spirit and purpose underlying its enactment” and that the preferred construction is that which “furthers the object, spirit and purpose of the statute” (McKinney’s Cons Laws of NY, Book 1, Statutes § 96). Moreover, courts are permitted to depart from an absolutely literal construction of a statute if such a step is necessary to “sustain the legislative intention although it is contrary to the literal letter of the statute” {id. § 111).
The object, spirit and purpose of section 10 (6) of the Court of Claims Act is remedial in nature, with the amendment giving the court greater discretion in deciding when late claim relief should be granted (L 1976, ch 280, § 2). The goal is to achieve “a single procedure applicable to all citizens of this State” and assure “greater and uniform access to the Court for all the people of this State” (Mem of State Exec Dept, 1976 McKinney’s Session Laws of NY, at 2312). It is well recognized that enacting, and subsequently enlarging, late claim relief evidenced a “strong concern that litigants with meritorious claims be afforded their day in court” (Calzada v State of New York, 121 AD2d 988, 989 [1986] [internal quotation marks omitted], quoting Plate v State of New York, 92 Misc 2d 1033, 1036 [1978]) and that the Legislature’s “aim, purpose and intent was to create a fairer and more logical late claim judicial procedure which would at least obviate (if not replace) the resort to private bills for access to this court, as theretofore existed” (Walach v State of New York, 91 Misc 2d 167, 170 [1977]).
In my view, therefore, it would be entirely inconsistent with this goal to consider the unexplained and possibly inadvertent placement of this new subdivision as effecting a silent repeal of this remedy with respect to a particular category of claims that do not differ, in any material respect, from other types of claims brought by other claimants. There is no dispute that late claim relief continues to be available to inmates who seek compensation for other kinds of losses, just as there is no dispute that such relief also continues to be available for other claims for property loss. I can conceive of no logical or legitimate reason *603 that the Legislature would have to abolish this significant remedy for only one type of claim and only when those claims were presented by one specific class of claimants.
Furthermore, I concur with the analysis of former Judge King in Fox v State of New York (supra), and believe that if such a restriction had been intended by the Legislature, it would have been expressed in a far more straightforward, overt manner and adequately explained.[4]
Indeed, there is another, more compelling, and fundamentally equitable reason to include inmate bailment claims under the remedial umbrella of section 10 (6). Rather than inferring a legislative intention to exclude this relief, one can also look to a precise legislative articulation, specifically that section 10 (9) expires on September 1, 2003 (L 1999, ch 412, part D, § 4). If the reasoning in McCann v State of New York (194 Misc 2d 340 [2002], supra) were to be adopted, then those inmates whose bailment claims arose during the limited life of subdivision (9), to wit, from December 7, 1999 to September 1, 2003, and only those inmates, would be foreclosed from the limited remedial relief available under section 10 (6). It would be an unfair and unsupportable inference to conclude that the Legislature intended, en passant, to impose such an inequitable distinction only upon these claims, placing them in what might be characterized as jurisdictional purgatory.
I hold, therefore, that the placement of subdivision (9) of Court of Claims Act § 10 in relation to the placement of subdivision (6) does not serve to deprive inmates of the ability to seek permission to file a late claim for their property loss claims.
While the late claim application does not address the statutory factors in any great detail, the original claim and the earlier motion practice herein provide sufficient information for due consideration of the motion. Claimant’s reason for failing to comply with the applicable time limitation was confusion about the legal requirements for commencing his claim. Ignorance of the law, or even inadvertent failure to comply with the jurisdictional legal requirements, does not provide an acceptable excuse for delay (see, e.g. Erca v State of New York, 51 AD2d 611 [1976], affd 42 NY2d 854 [1977]; Sevillia v State of New York, 91 AD2d 792 [1982]). On the other hand, claimant’s timely, albeit improperly served, claim gave the State the requisite notice that litigation was contemplated, *604 and the original claim, along with the administrative remedies previously pursued, provided ample opportunity for the underlying facts to be investigated. I conclude, therefore, that there would be no prejudice to defendant if the requested relief is granted. Claimant has no remedy against any party other than the State, and his proposed cause of action is not “patently groundless, frivolous, or legally defective” (Matter of Santana v New York State Thruway Auth., 92 Misc 2d 1, 11 [1977], supra).
That portion of claimant’s motion seeking to withdraw Claim No. 104699 is granted. With respect to that portion of the motion seeking permission to late file a claim alleging the same cause of action, after considering the statutorily prescribed factors, I deem it a provident exercise of my discretion to grant the requested relief. Claimant shall file and serve a verified claim that is substantively identical to that submitted in Claim No. 104699, in compliance with the requirements of Court of Claims Act §§ 10 and 11 within 60 days of service of a file-stamped copy of this order.

. This affirmative defense was raised with sufficient particularity to meet the pleading requirement of section 11 (c).

. This, and other Court of Claims decisions, may be found on the Court of Claims Web site at <www.nyscourtofclaims.state.ny.us >.

. The fact that section 10 (2) incorporates this two-year limitation period demonstrates that the Legislature intended the EPTL statute of limitations to be considered rather than the CPLR article 2 statute of limitations for claims based on negligence (three years) or intentional tort (one year) that may have caused the death.

. Judge King had the added insight of having been a member of the Legislature, as an Assemblyman, prior to his tenure on the bench.