OPINION OF THE COURT
Michael E. Hudson, J.
*399 This application for leave to file and serve a late claim compels a review of inconsistent determinations regarding the applicability of the late claim remedies set forth within Court of Claims Act § 10 (6) to inmate personal property claims, which are governed by Court of Claims Act § 10 (9). For reasons that follow I believe that the provisions of section 10 (6) do not apply to claims under section 10 (9), and will deny such discretionary relief without considering the underlying merits of the application.
Claimant, an inmate in the custody of the Department of Correctional Services, has sought to recover $915.37 in damages resulting from the alleged loss of personal property between March 26 and 29, 2003, at Attica Correctional Facility. Although challenged by defendant, it appears that Mr. Murray timely pursued his personal property claim administrative remedy in the manner set forth within 7 NYCRR 1700.4 (a), with an initial filing having been made on March 29, 2003. His institutional claim was disapproved on July 17, 2003, and his administrative appeal was thereafter denied on September 17, 2003. Claimant received a copy of that appeal denial on September 19, 2003. While his administrative proceedings were pending claimant also served a notice of intention to file a claim for this matter, as well as another claim for loss of personal property accruing on or about February 19, 2003.[1] It is undisputed that the notice of intention was received by the Attorney General on May 16, 2003, although the manner of service is unstated. At no point has claimant filed and served a claim in this matter. He filed this motion on January 30, 2004, some 135 days after his administrative appeal was denied, and after the 120-day commencement limitation within section 10 (9) had expired.
In now seeking leave to file and serve a late claim pursuant to Court of Claims Act § 10 (6) claimant has urged that he was unable to timely commence this matter due to his need to devote time to his pursuit of six unrelated legal proceedings, as well as the unavailability of a notary public to help verify his claim. While the court will not reach the merits of that excuse, or consider any of the other factors set forth in support of a late claim, it notes that to the extent claimant has urged that he was denied access to a notary public over the period in which he could have commenced his action as of right, the record in the claim Murray v State of New York (Ct Cl, Claim No. 108304), *400 filed on September 19, 2003, to recover for similar items of property lost or stolen in an institutional transfer that culminated in mid-February 2003, demonstrates that claimant did have access to a notary public while this claim was viable.
Court of Claims Act § 10 (9) was enacted in 1999 as part of a prison litigation reform package (L 1999, ch 412, part D, § 2). Prior to December 7, 1999, the effective date of that statute, inmates in correctional facilities who sought to sue the State for injury to or loss of personal property would proceed in the same manner as other litigants. Thus, inmates were required to file and serve their claims within 90 days of accrual, although that time limitation could be extended to two years for negligence or unintentional tort claims (Court of Claims Act § 10 [3]), or to one year for intentional tort claims (Court of Claims Act § 10 [3-b]), through the service of a notice of intention upon the Attorney General during that same 90-day period of time. As with all claimants, prisoners who failed to take timely action could apply for leave to file and serve a late claim under Court of Claims Act § 10 (6). However, the enactment of subdivision (9) has changed the methodology under which that one type of claim would be litigated. An inmate who suffers damage or loss of personal property is now compelled to first attempt to resolve the claim through administrative proceedings within the institution. If a satisfactory result is not obtained, the prisoner can then commence suit. The time limit for starting suit has been fixed at 120 days rather than 90 days, and measured from the time of exhaustion of administrative remedies rather than the date of initial damage or loss.
Subdivision (9) does not, within its terms, provide a late claim remedy, and in that regard is similar to subdivisions (1), (2), (3), (3-a), (3-b) and (4) of section 10, which address appropriation, wrongful death, tort, and contract claims. Any such relief would be separately addressed within subdivision (6), which sets forth a means by which a claimant who fails to timely commence an action or timely serve a notice of intention can seek leave of the court to file and serve a late claim. Critically, subdivision (6) is limited in its application to failures in compliance “as provided in the foregoing subdivisions.” While the other forms of action listed within section 10 precede subdivision (6), and thus are “foregoing subdivisions,” the more recently enacted subdivision (9) follows that provision, and under a literal reading clearly cannot be so deemed. If that statutory language is to be given its plain meaning, the late claim review mechanism would not *401 be available to the one type of claim covered under subdivision (9). Conversely, present subdivision (6) was enacted for a remedial purpose, that is “[t]o provide a uniform procedure under which claims which have not been timely filed may nevertheless be heard and determined,” and make available “a single procedure applicable to all citizens of this State, [that] will ensure every person an equal opportunity to have his claim heard and considered fairly” (Mem of St Exec Dept, 1976 McKinney’s Session Laws of NY, at 2311-2312). That purpose would not be promoted if a literal interpretation is afforded the revised statutory structure.
Although no appellate authority exists, several decisions of the Court of Claims have specifically addressed the applicability of the late claim remedy to inmate property claims. In McCann v State of New York (194 Misc 2d 340 [2002]), the court (Hard, J.) reviewed the relationship between the above provisions, holding that the intention of the Legislature was reflected in the clear and unambiguous language of the statute, and must be afforded its literal construction to exclude the revised inmate personal property claim process of subdivision (9) from the late claim mechanism of subdivision (6). Later, in Wright v State of New York (195 Misc 2d 597 [2003]), the court (Patti, J.) determined that notwithstanding the statutory framework of section 10, the spirit and purpose of subdivision (6) is remedial in nature, and should be liberally construed so as to not exclude one limited category of claim in the absence of an affirmative expression of legislative intent. I note that in subsequent reviews two other members of the Court of Claims have favored the remedial purpose rationale of Wright rather than the literal construction set forth in McCann (see Monroe v State of New York, Ct Cl, June 9, 2003, Midey, Jr., J., Motion No. M-66389, UID No. 2003-009-021; Roberts v State of New York, Ct Cl, June 3, 2003, Midey, Jr., J., Claim No. 107029, Motion Nos. M-66227, M-66234, UID No. 2003-009-019; Morris v State of New York, Ct Cl, Oct. 9, 2003, Lebous, J., Motion No. M-67313, UID No. 2003-019-561).[2]
Several considerations cause me to now accept the interpretation set forth in McCann over that in Wright. First, the 1999 amendment also constituted a reenactment of the statute amended (Citibank, N.A. v City of New York Fin. Admin., 43 NY2d 425, 431 [1977]), and the various provisions are thus to *402 be construed together as one act. In interpreting that statute it is presumed that the intent of the Legislature is reflected in the words chosen, and in the plain meaning they express (A.J. Temple Marble & Tile v Union Carbide Marble Care, 87 NY2d 574, 580 [1996]). In the absence of evidence that another meaning was intended, courts are not free to reject a literal construction in favor of another interpretation that does not comport with the statute’s plain meaning (A.J. Temple Marble & Tile, 87 NY2d at 580-581, 584). Here, the language of the revised section 10 is clear and unambiguous, and no confusion results if the wording and structure of the statute are applied, as enacted, to allow a late claim remedy for certain specified causes of action against the State, but not to the revised institutional property claims procedure. In contrast, any interpretation that would bring subdivision (9) within the ambit of subdivision (6) requires that the statutory framework be disregarded, and that the reference to “foregoing subdivisions” be ignored. Such an approach defies a fundamental rule of statutory construction; namely, that each word or phrase in an enactment must be afforded its full meaning (see McKinney’s Cons Laws of NY, Book 1, Statutes §§ 230, 231; see also A.J. Temple Marble & Tile, 87 NY2d at 582-583). That subdivision (6) serves a remedial purpose affords no sanction to ignore the plain language of the statute.
“[E]ven a remedial statute must be given a meaning consistent with the words chosen by the Legislature — those words define the scope of the remedy that the Legislature deemed appropriate. In our view, the role of the courts is to give effect not only to the remedy, but also to the words that delimit the remedy” (Enright v Eli Lilly & Co., 77 NY2d 377, 385 n 1 [1991]; see also Matter of First Energy Leasing Corp. v Attorney-General of State of N.Y., 68 NY2d 59, 63-64 [1986]).
A further ground exists for crediting Judge Hard’s interpretation. Effective March 31, 2003, the Legislature reenacted subdivision (9), then set to expire on September 1, 2003, so as to extend its effect until September 1, 2005 (L 2003, ch 16, § 20). That legislative action followed the issuance of the Mc-Cann decision, but occurred just prior to the filing of Wright on April 8, 2003. It must be presumed that the Legislature had knowledge of the construction that Judge Hard had afforded subdivision (9), and had accepted that interpretation as reflecting its intent when it reenacted the statute in 2003 (Matter of *403 Scheftel, 275 NY 135, 141 [1937]; see also McKinney’s Cons Laws of NY, Book 1, Statutes § 75, at 164-166). The speculation within Wright (195 Misc 2d at 602) that the inmate property claims procedure may have been inadvertently positioned within the revised statutory framework is not only dependent upon some initial finding of statutory ambiguity that I do not see, but must be deemed fully refuted in light of the post -McCann reenactment of the subdivision.
I understand the concern in Wright that under a literal reading of the revised statute a small group of claimants is now deprived of a long-standing discretionary remedy for one type of claim, on a temporary basis, without an affirmative expression of legislative purpose. In my view that focus discounts the comprehensive nature of the revised inmate property claims procedure. The current process does not simply remove a late claim remedy; rather, it substitutes an entirely new methodology with several facets that differ from the other claims provisions within section 10. Under subdivision (9) the Legislature also has compelled the establishment of an initial claims adjustment remedy which should prove less formal and more expeditious than litigation, and all without any filing costs. The result obtained is not binding upon inmate claimants. They are afforded 120 days to commence litigation if they are dissatisfied with the institutional determination, with accrual measured from the exhaustion of the administrative process, rather than 90 days from the initial occurrence. Necessarily, at the point of accrual those claimants would already be engaged in the active pursuit of their matters.
Lastly, while I agree with Judge Hard that when legislative intent can be derived from the plain meaning of a statute there is no need to speculate about whether the enactment is wise or equitable, I note that Judge Patti has opined that he can conceive of no logical or legitimate reason for the Legislature to have removed a late claim remedy from the revised inmate personal property claims mechanism. In response, I believe that some justification is apparent from the circumstances of this application, as well as the several decisions that have previously addressed the issue. All involve relatively small sums, with three of the six seeking less than $261. The largest late claim request was presented in Morris, a total of $1,278.35, arising from two incidents. Further, while the total time involved in the administrative review in Wright was not set forth, the other proceedings occurred over periods that varied between 31 and 282 days, *404 with three of those institutional determinations completed in 50 days or less. I am mindful that an inmate could sustain a greater loss of personal property, and that for poorer inmates any loss is significant, as is the delay in recouping that loss. For such smaller claims, the implementation of a revised claim process that allows for expeditious and less formal reviews that are not binding upon inmates, without any cost to them, together with a longer period for commencement as of right, yet compels those who are dissatisfied with institutional determinations to promptly continue their pursuit of their claims through formal litigation, is hardly illogical or illegitimate.
Based upon the above, claimant’s motion for leave to late file and serve his claim is denied, without reaching the merits of his application pursuant to Court of Claims Act § 10 (6).

. Claimant does not contend that his service of a notice of intention would have extended his time to file and serve a claim under section 10 (9).

. Unpublished decisions and orders and selected decisions of the Court of Claims are available at <www.nyscourtofclaims.state.ny.us>.