Robert KEENEY and The William J. Hofmann Agency, Inc. Plaintiff,

v.

KEMPER NATIONAL INSURANCE COMPANIES, Lumbermens Mutual Casualty Company, American Motorists Insurance Company, American Manufacturers Mutual Insurance Company and American Protection Insurance Company, Defendants.

No. 96 CV 2851(ADS).

United States District Court, E.D. New York.

April 23, 1997.

Robert J. Rando, Rando & Peslak, for plaintiffs.

Joseph L. Forstadt, Stroock, Stroock & Lavan, for defendants.

MEMORANDUM DECISION and ORDER

SPATT, District Judge.

This case was commenced by the plaintiffs Robert F. Keeney ("Keeney") and The William J. Hofmann Agency, Inc. ("Hofmann") or (collectively the "plaintiffs") against the defendants Kemper National Insurance Companies, Lumbermens Mutual Casualty Company, American Motorists Insurance Company, American Manufacturers Mutual Insurance Company and American Protection Insurance Company ("Kemper" or the "defendants") based on the alleged illegal termination of the Agency Agreement (the "Agreement") by the defendants. The letter terminating the agreement was received by the plaintiffs on or about June 1, 1995 with an effective date of December 1, 1995.

In their Complaint, the plaintiffs allege fifteen causes of action as follows: Count 1—Violation of the Fair Housing Act, 42 U.S.C. § 3604; Count 2—Fraudulent Misrepresentation (Fraud in the Inducement); Count 3—Fraudulent Misrepresentation; Count 4—N.Y. Gen. Bus. Law §§ 349 & 350 Unfair and Deceptive Trade Practices; Count 5—Insurance Law §§ 3425 & 3429 Unfair Trade Practices; Count 6—Breach of Contract

(Wrongful Termination); Count 7—Breach of Contract of Good Faith and Fair Dealing; Count 8 New York Franchise Act Violation (Fraud); Count 9—New York Franchise Act Violation (Wrongful Termination); Count 10—Discrimination Under N.Y.S. Executive Law Article 15; Count 11—Tortious Inference with Contract; Count 12—Tortious Inference with Prospective Business Advantage; Count 13—Defamation; Count 14—Defamation (Compelled Self–Publication); Count 15—Discrimination Under N.Y.S. Civil Rights Law §§ 40–c & 40–d.

A review of the Complaint reveal that it is the classic illustration of the so-called "SHOTGUN" method of pleadings. The defendants now move to dismiss the Complaint for failure to state a claim upon which the Court can grant relief pursuant to Fed. R.Civ.P. 12(b)(6).

## I. BACKGROUND

The plaintiff William J. Hofmann Agency is a corporation organized and existing under the laws of the State of New York, with its place of business in Massapequa, New York. Hofmann has been in the business of selling property and casualty insurance since 1926. In or about 1966, Francis C. Keeney joined the agency as a producer of property and casualty insurance. Approximately one year later, he purchased the Agency. In 1969, Francis C. Keeney incorporated the business as William J. Hofmann Agency, Inc. In 1978, Francis Keeney's son, the plaintiff, Robert F. Keeney, joined the firm.

On or about October 1, 1981, Hofmann entered into an Agency Agreement with Kemper. Pursuant to the Agreement, Hofmann was authorized to solicit several types of insurance. Under the terms of the agreement, Hofmann was authorized to bind the defendants only to the extent specific authority was granted by the defendants. In the agreement, the defendants retained exclusive and absolute control over the underwriting and acceptance of all policies generated under the agreement. During the fourteen years between 1981 and 1995, Hofmann apparently generated a large volume of business for the defendants and experienced substantial growth and success.

On or about June 1, 1995, the plaintiffs received a letter from Joseph L. Kondratowicz, the Northeast Region Personal Lines Manager for Kemper, advising them that, effective December 1, 1995, Kemper was exercising its termination rights under the Agreement due to an "unacceptable loss ratio." On June 6, 1996, the plaintiffs commenced this lawsuit to recover damages as a result of the defendants alleged illegal termination of the Agreement. The defendants now move to dismiss all of these causes of action for failure to state a claim upon which the Court can grant relief pursuant to Fed. R.Civ.P. 12(b)(6).

## II. DISCUSSION

As to the standard guiding the Court's determination of the defendants' motion to dismiss for failure to state a claim, "the court should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief' ". *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir.1985) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)); *see also Intern. Audiotext Network, Inc. v. AT & T*, 62 F.3d 69, 71 (2d Cir.1995). The Second Circuit stated that in deciding a Rule 12(b)(6) motion a Court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken". *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir.1993); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992).

It is not the Court's function to weigh the evidence that might be presented at a trial, the Court must merely determine whether the complaint itself is legally sufficient, *see Goldman*, 754 F.2d at 1067, and in doing so, it is well settled that the court must accept the allegations of the complaint as true, *see LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991); *Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.*, 879 F.2d 10, 14 (2d Cir.1989), *cert. denied*, 493 U.S. 1022, 110

S.Ct. 723, 107 L.Ed.2d 743 (1990), and construe all reasonable inferences in favor of the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Doe v. City of New York,* 15 F.3d 264, 266 (2d Cir.1994). "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

The Court is mindful that under the modern rules of pleading, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief", Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice". Fed.R.Civ.P. 8(f).

It is within this framework that the Court addresses the present motion to dismiss the complaint as to all causes of action.

1. *The plaintiffs' causes of action*

 A. *Count I—Fair Housing Act 42 U.S.C. § 3604*

■ Section 3604 of the Fair Housing Act ("FHA") provides in pertinent part as follows:

> it shall be unlawful—
>
> (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

To establish a prima facie case of discrimination in violation of the FHA, the plaintiffs need to prove (1) that they are members of a protected class, (2) the plaintiffs sought and were qualified to rent or purchase an apartment or dwelling, (3) the plaintiffs were denied the opportunity to rent or purchase the apartment or dwelling, and (4) the apartment or dwelling remained available thereafter. *See Cabrera v. Jakabovitz,* 24 F.3d 372, 381 (2d Cir.1994).

■ In this case, the plaintiffs allege that the "Agreement was terminated because of Plaintiff's age, Keeney's age, forty-three (43) [years old]." The plaintiffs also allege that the "Agreement was wrongfully terminated because of the geographical discrimination against the Long Island insurance market." Pl. Compl. at p. 7. Moreover, the plaintiffs claim that "Defendants' wrongful termination of the Agreement resulted in disparate impact discrimination in violation of the FHA on the basis of race, national origin, familial status, age and/or gender."

The defendants contend that the plaintiffs' allegations based upon age and geography do not state a claim under the FHA, as the statute does not prohibit discrimination on these grounds. In addition, the defendants assert that the plaintiffs have not alleged that any person belonging to a protected class has been discriminated against in the sale or rental of a dwelling. According to the defendants, the Complaint only discusses these issues in a "vague and conclusory laundry list" of alleged discrimination against unnamed "others". The defendants maintain that conclusory allegations cannot survive a motion to dismiss because any complaint asserting a civil rights violation must make specific factual allegations indicating a deprivation of rights protected by the statute. The defendants claim that a complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a Court could find a violation of the Civil Rights Act, fails to state a claim under 12(b)(6).

In the Court's view, the issue of whether the FHA is applicable to the insurance industry in this manner need not be decided by this Court at this time. The more relevant issue is whether the claim under the FHA can be sustained in any event. The Court finds that the FHA is not applicable to this matter. This cause of action fails because age and geographical discrimination are not within the scope of the FHA, and therefore, such a claim is not actionable. Also this Court does not believe this cause of action can be sustained because no sale or rental of a dwelling is involved.

■ In addition and significantly with regard to the other causes of action, the Court

finds that pursuant to clause seven of the Agreement, as a matter of right, the defendants had the right to terminate the Agreement at any time as long not less than 180 days notice was given to the plaintiffs. The relevant clause states:

## TERMINATION OF AGREEMENT

7. This Agreement may be terminated by Company giving not less than 180 days notice to Agent or by Agent giving notice to Company at any time, provided nevertheless,
(a) the Agreement shall terminate immediately:
(i) without notice in the event the Agent's license or authorization to engage in the insurance business is terminated or suspended by public authority;
(ii) Upon either party giving written notice to the other in the event of abandonment, fraud, insolvency, or gross and willful misconduct on the part of such other party.

In the Court's view, this clause permits the defendants to terminate the Agreement on not less than 180 days notice or immediately without notice, in the contingencies set forth in subparagraphs (i) or (ii). That the defendants gave a reason, namely, "unacceptable loss ratios", does not transform the termination into a for cause separation. It is undisputed that the defendants gave notice of their intent to terminate the Agreement to the plaintiffs on June 1, 1995 with an effective date of December 1, 1995 thereby providing more than the requisite 180 days notice. The Court finds the defendants acted in compliance with clause seven in the Agreement and the Agreement was effectively terminated. Therefore, the defendants were within their right to terminate the Agreement and, in any event, this cause of action based on the Fair Housing Act is dismissed.

Within the context of a Fed.R.Civ.P. 12(b)(6) motion, the Court notes that it is constrained to only address the pleadings, namely, the Complaint in this matter. However, in this matter, the Complaint is premised almost entirely on the Agency Agreement and therefore the Court considers it integral to the Complaint and it will be considered part of the pleadings for purposes of this motion to dismiss. *See International Audiotext Network, Inc. v. AT & T Co.,* 62 F.3d 69, 72 (2d Cir.1995) ("when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral, to the complaint." the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment).

### B. *Count II—Fraud in the Inducement*

■ As to the second cause of action based on fraud in the inducement, in order to state a claim for fraud, there must be (1) a representation of fact, (2) which is either untrue and known to be untrue or recklessly made, (3) which is offered to deceive the other party and (4) to induce then to act upon it, (5) causing injury. *See Jo Ann Homes v. Dworetz,* 25 N.Y.2d 112, 119, 302 N.Y.S.2d 799, 803, 250 N.E.2d 214 (1969).

■ The plaintiffs' claim that they relied upon the representations regarding the bases and procedures for termination of the Agreement and the responsibilities and obligations of the respective parties, as specified in clause seven of the Agreement. Pl.'s Compl. at ¶¶ 27–28. The plaintiffs allege that they were induced to enter into, and perform in reliance of the terms of the Agreement and that at the time these material representations were made, the defendants knew that they were false and intended to induce the plaintiffs to rely and act upon them resulting in injuries. In particular, the plaintiffs claim that clause seven identified the reasons for which the Agreement could be terminated for cause by an Act or omission of the plaintiff namely, public authority termination or suspension of the plaintiffs' license, plaintiffs' abandonment, fraud insolvency, or gross and willful misconduct, and the plaintiffs' failure to pay money owed to the defendants.

According to the plaintiff, the parties specifically excluded "loss ratios" from the enumerated list in the Agreement for which they could be terminated for cause, and instead the defendants accepted and reserved full responsibility for "loss ratios" in clause 12 of the Agreement, by reserving exclusive underwriting responsibilities and the "absolute right to decline to accept any insurance application or to cancel any and all insurance that may be written hereunder."

On the other hand, the defendants allege that this cause of action is no more than a "dressed-up breach of contract claim" and therefore should be dismissed. According to the defendants, New York law provides that an allegation "that [the] defendant made [an] agreement knowing that it would not abide by it, thereby misrepresenting its intention to [the] plaintiffs ... says nothing which is not legally embraced by [a cause] of action for breach of contract." *L. Fatato, Inc. v. Decrescente Distrib. Co.*, 86 A.D.2d 600, 601, 446 N.Y.S.2d 120, 121 (2d Dep't 1982). The defendants contend that there is no action for fraud "when the only fraud charged related to a breach of contract." *Gould v. Community Health Plan*, 99 A.D.2d 479, 480, 470 N.Y.S.2d 415, 417 (2d Dep't 1984).

In addition, the defendants maintain that the plaintiffs have not alleged facts that give rise to an inference of fraudulent intent. According to the defendants, conclusory speculative allegations of fraud is not a basis for a cause of action. Kemper alleges that the plaintiffs rely on their standard conclusory allegation failing to comply with the pleading requirements of the Federal Rules of Civil Procedure.

As discussed above, the Court finds that the defendants had the absolute contractual right to terminate the Agreement by giving not less than 180 days notice to the plaintiff, and therefore, were in compliance with the Agreement. Further, there are insufficient allegations of fraud in the inducement, as a matter of law. The motion to dismiss Count II is granted.

### C. *Count III—Fraudulent Misrepresentation*

■ With regard to Count III, the plaintiffs claim that on or about June 1, 1995 and again on or about October 1, 1995, the defendants improperly and wrongfully attempted to terminate the Agreement by identifying loss ratios, exclusively resulting from the defendants' underwriting and acceptance practice, as the reason for terminating the Agreement.

In response, the defendants claim that the plaintiffs do not allege any facts to support the allegation that they were induced to act on the basis of this supposed misrepresenta-tion. According to the defendants, the plaintiffs also do not explain how they relied "to their detriment" on the alleged misrepresentation concerning the reason for terminating the Agreement. The defendants contend that this count fails because the plaintiffs do not allege that they have taken a single action in reliance upon Kemper's stated reasons for terminating the Agreement. The plaintiffs vaguely assert that Kemper induced them to act on its reasons for terminating the Agreement, and do not identity what acts were taker in reliance upon this "misrepresentation," or what injury they suffered.

In the Court view, as discussed above, the defendants had the absolute unconditional right to terminate the Agreement by giving not less than 180 days notice to the plaintiff, and therefore, were in compliance with the Agreement. Again, the plaintiffs failed to allege a cause of action for fraudulent misrepresentation. This is essentially a breach of contract action, in which the fraud, if there be any, is subsumed. The defendants' motion to dismiss Count III is granted.

### D. *Count IV—New York General Business Law §§ 349 & 350 Unfair and Deceptive Trade Practice*

■ Count IV of the Complaint alleges that the defendants violated New York General Business Law section 349–350. Section 349(a) provides:

Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this State are hereby declared unlawful.

As this Court noted in *Tinlee Enters. v. Aetna Casualty & Surety Co.*, 834 F.Supp. 605 (E.D.N.Y.1993), " '[t]he typical violation contemplated by the statute involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising.' " *Id.* at 608.

The plaintiffs allege that the defendants' acts harm consumers because the deception is a sham excuse to conceal illegal redlining that results in the unavailability of, or the higher price for, insurance for consumers locate in the redlined locations.

In addition, the plaintiffs allege that under N.Y. Gen. Bus. Law § 349(a), a claim can be

made for violations in the insurance industry. The plaintiffs maintain that a private right of action may be brought by any person injured by the deceptive acts or practices that also cause harm to consumers. *See Riordan v. Nationwide Mut. Fire Ins. Co.,* 756 F.Supp. 732, 737 (S.D.N.Y.1990), *aff'd,* 977 F.2d 47 (2d Cir.1992).

Further, the plaintiffs contend that they have specifically noted the deceptive acts the defendants are engaged in, namely, the fraudulent termination of agency agreements for the sham excuse of bad loss ratios to covertly achieve their illegal redlining scheme. The plaintiffs also assert that they have sufficiently alleged the requisite harm to consumers, namely, that the home buyers on the shoreline of Long Island are at severe disadvantage due to the shrinking home-owner insurance pool.

In opposition, the defendants claim that section 349 is a consumer protection statute and was not intended to establish a parallel regulatory scheme for the insurance industry. The defendants allege that the typical violation contemplated by the statute involves an individual consumer who falls victim to misrepresentation made by a seller of consumer goods usually by way of false and misleading advertising. The defendants further assert that the plaintiffs do not allege in the Complaint that Kemper has in any way deceived consumers into purchasing its products. The defendants claim that allegations focus on the commercial relationship between two sophisticated business actors and that to extend the remedy as provided in § 349 to these types of plaintiffs would completely alter the legal duties governing commercial relationships in New York. *See Genesco Entertainment v. Koch,* 593 F.Supp. 743, 751 (S.D.N.Y.1984).

In addition, the defendants contend that a higher standard of detail and specificity to state a claim under § 349 is required than what the plaintiffs have provided in the Complaint. According to the defendants, conclusory allegations of widespread deceptive practice would not be sufficient to state a claim under § 349. The conclusory allegations merely state that the defendants have engaged in the illegal enterprise of redlining the Long Island insurance market and terminating Long Island brokers based on the sham excuse of loss ratios.

The Court finds, once again, that the allegations in Count IV are insufficient to state a claim. As mentioned earlier, by virtue of clause seven of the Agreement's express and clear language, the defendants can terminate the Agreement by giving not less than 180 days notice without any reason at all. Also, in the Court's view, the plaintiffs fail to allege a cause of action under New York General Business Law § 349 as a matter on law.

The plaintiff also makes a claim under section 350 of the New York General Business Law which provides:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state I hereby declared unlawful.

The defendants claim that the plaintiff has not alleged any facts regarding advertising in the Complaint. The Court agrees. The Court finds that the Complaint, in fact, is devoid of any allegation with regard to advertising, and therefore, the cause of action based on General Business Law § 350 is insufficient as a matter of law. The defendants' motion to dismiss Count IV in its entirety, is granted.

### E. Count V—New York Insurance Law §§ 3425—3429

Sections 3425 through 3428 of the New York Insurance Law establish guidelines for the procedures by which insurers may decline to renew individual policies and terminate agent contracts.

The plaintiffs allege that Kemper has violated §§ 3425—3429 of the New York State's Insurance Law by making misrepresentations with regard to the non-renewal of the plaintiffs' insured policies in violation of the above mentioned statutes. The plaintiffs assert that their claims are focused on the defendants' fraudulent reasons for non-renewing the plaintiff's policies to third parties. The plaintiffs further contend that the defendants' acts harm insurance consumers and brokers because the Agreement was terminated due to "unacceptable loss ratios" resulting in a sham excuse to conceal illegal redlining that results in the unavailability of, or the higher price for, insurance for consumers located in the redlined location.

In response, the defendants contend that the plaintiffs have stated no facts to support an allegation that any of the specific renewal procedures outlined in the above mentioned sections have been violated. In addition, Kemper contends that although § 3429 prohibits insurers from refusing to issue or renew fire insurance and automobile insurance contracts based solely on the geographical location of the risk, the plaintiffs have not alleged any failure to renew or insure the policy of a single individual insured, and as a result, have not alleged facts sufficient to sustain a claim under this section.

The defendants also note that the plaintiffs have neglected to mention § 3430 of the Insurance Law, which provides the only remedy for termination of an insurance agents' contract because of geographic location. However, Kemper states that the remedy for the termination of an insurance agent's contract because of geographic location is administrative and the Insurance Law does not create a private right of action for agents whose contracts are so terminated.

The Court finds that this cause of action fails to state a claim upon which relief can be granted. The Court finds that the defendants did not, as a matter of law, make any actionable material misrepresentations with regard to the termination clause or any other aspect of the Agreement. Therefore, the cause of action pursuant to New York Insurance Law §§ 3425 through 3429 is dismissed.

### F. Count VI—Breach of Contract (Wrongful Termination)

The plaintiffs allege that the defendants have failed to perform a validly executed contract, namely, the Agreement. In particular, the plaintiffs claim that on or about June 1, 1995, and again on or about October 1, 1995, the defendants willfully and with malice, wrongfully and without just cause attempted to terminate the Agreement and since that time have prevented the plaintiff Hofmann from performing its part of the Agreement, although the plaintiff has duly tendered its services to the defendants and has been and is still ready and willing to perform said services.

On the other hand, the defendants assert that while the plaintiffs properly identified the reasons why the Agreement can be terminated without notice, they did not include the first portion of clause seven. That portion of the Agreement provides that termination without cause is permitted as long as not less than 180 days notice is given to the plaintiffs. The defendants further note that the plaintiffs do not contend anywhere, in the Complaint and elsewhere, that such timely notice was not provided. The defendants correctly maintain that it is well settled that, with respect to this type of termination clause, a party has an absolute, unqualified right to terminate the contract on timely notice without court inquiry into whether the termination was activated by an ulterior motive.

The Court finds that the defendants are not liable for breach of the agreement because Kemper possessed the absolute right to terminate the agreement without cause by giving the requisite 180 days notice to the Agency. In the Court's view, by doing so the defendant did not breach the contract as a matter of law, and the defendants' motion to dismiss Count VI is granted.

### G. Count VII—Breach of Covenant of Good Faith and Fair Dealing

In *Readco Inc., v. Marine Midland Bank,* 81 F.3d 295 (2d Cir.1996), the Second Circuit stated that under New York Law, barring a contractual agreement to the contrary, there is an implied covenant of good faith and fair dealing in every contract. *Id.* at 301.

In the instant case, the plaintiffs contend the defendants breached the covenant of good faith and fair dealing implied in the contract and have acted in an intentional, malicious and deliberate manner by attempting to terminate the Agreement for the stated reasons of "unacceptable loss ratios" and "unprofitable automobile loss ratios."

In response, the defendants claim that the implied covenant of good faith and fair dealing cannot be used to trump an explicit contractual provision. Kemper further notes that the Agreement cannot be converted into

a termination for cause by invoking the covenant of good faith. The Court agrees.

The Court finds that the defendants did not breach the covenant of good faith and fair dealing by exercising their absolute right to terminate without any cause. The parties expressly agreed to that method of termination. The defendants' motion to dismiss Count VII is granted.

H. *COUNT VIII—New York Franchise Sales Act Violation—Fraud & COUNT IX—New York Franchise Sales Act—Wrongful Termination*

■ "The Franchise Sales Act, General Business Law § 680–696, was enacted in 1980 to combat abuses that had accompanied the growth of the franchising industry." *A.J. Temple Marble & Tile, Inc. v. Union Carbide Marble Care, Inc.,* 87 N.Y.2d 574, 640 N.Y.S.2d 849, 663 N.E.2d 890 (1996). The Act contains comprehensive disclosure and registration requirements and an expansive antifraud provision with regard to franchises. *Id.* Under the civil remedies provision, "a person who offers or sells a franchise in violation of the Act is liable to the purchaser for damages . . . ." *Id.*

According to the plaintiff, the Agreement between the parties is a franchise agreement within the meaning of the New York Franchise Act, New York General Business Law §§ 680 et seq. The plaintiffs assert in the Complaint that they paid fees comprised of premium payments to the defendants for each of the insurance products the plaintiff sold, thereby creating a franchise relationship. The plaintiffs further allege, in a general manner, that the defendants' conduct with regard to their fraudulent acts was in violation of the Franchise Sales Act.

In response, the defendants contend that all the claims under the Franchise Sales Act are barred by the statute of limitations. General Business Law, section 691, subdivision four, states as follows:

An action shall not be maintained to enforce a liability created under this section unless brought before the expiration of three years after the act or transaction constituting the violation.

The defendants claim that the statute of limitations began to run from the date the parties entered into their "franchise arrangement", namely, 1981, and was not tolled by any alleged "continuing violation." *See Zaro Licensing, Inc. v. Cinmar, Inc.,* 779 F.Supp. 276, 287 (S.D.N.Y.1991). Because the Complaint alleges that Hofmann Agency entered into the Agreement with Kemper "on or about October 1, 1981," the statute of limitation on these actions expired on or about October 1, 1984, and as a result, Counts VIII and IX, should be dismissed.

The Franchise Sales Act contains a three-year statute of limitations. See General Business Law § 691(4). The Court is unsure of the appropriate commencement date for the running of the statute of limitations, whether in 1981 when the Agreement was signed or when the alleged illegal termination of the Agreement occurred in 1995. Notwithstanding Judge Sweet's determination in *Zaro Licensing, Inc. v. Cinmar, Inc.,* 779 F.Supp. 276, 287 (S.D.N.Y.1991), that the statute of limitations begins to run on the date the parties entered into the franchise agreement, this Court is unwilling to dismiss this cause of action based on that reasoning. *See Zaro Licensing, Inc. v. Cinmar, Inc.,* 779 F.Supp. 276, 287 (S.D.N.Y.1991).

However, the Court finds that this cause of action is insufficient, and therefore, is dismissed. In the Court's view, the Agreement involved in this matter does not constitute a franchise agreement under the New York Franchise Sales Act as a matter of law. None of the relevant elements which create a franchise arrangement were pled by the plaintiffs in the Complaint. Moreover, the Court finds that it would not be possible to plead the requisite elements to establish a franchise arrangement because the instant Agreement is merely a "garden variety" commercial contract and is not a franchise agreement. In the Court's view there is nothing about the contract that would enable the Court to categorized it as a franchise agreement. Therefore, because the Agreement is not a franchise agreement, and therefore, does not fall under the New York Franchise Sales Act, the defendants' motion to dismiss Counts VIII and IX is granted.

## I. Count X—Discrimination under New York Executive Law, § 296

■ Section § 296 of the Human Rights Law states in pertinent part:

1. It shall be an unlawful discriminatory practice:

(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or martial status of any individual, to refuse to hire or employ or to bar or to discharge from .employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

In *Mayer v. Manton Cork Corp.*, 126 A.D.2d 526, 510 N.Y.S.2d 649 (2d Dep't 1987), the Court held that to state a legally sufficient claim for employment discrimination, the plaintiff must allege that he: (1) is a member of a protected class; (2) was qualified for a particular position; (3) was denied a privilege of his employment and ultimately was discharged from that position; and (4) was discharged under circumstances giving rise to an inference of discrimination. *Id., see also Wanamaker v. Columbian Rope Co.*, 108 F.3d 462 (2d Cir.1997); *Sutera v. Schering Corp.*, 73 F.3d 13 (2d Cir.1995); *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176 (2d Cir.1992); *Hill v. Westchester Aeronautical Corp.*, 112 A.D.2d 977, 492 N.Y.S.2d 789 (2d Dep't 1985).

Under the New York Human Right Law, N.Y. Exec. Law § 296(1)(a) based on employment discrimination, a plaintiff must demonstrate that he or she is an employee or a prospective employee of the defendants. Section 296 does not provide a cause of action for independent contractors. *Frishberg v. Esprit de Corp., Inc.*, 778 F.Supp. 793 (S.D.N.Y.1991), aff'd, 969 F.2d 1042 (2d Cir. 1992); *Mehtani v. New York Life Ins. Co.*, 145 A.D.2d 90, 537 N.Y.S.2d 800, 802–03 (1st Dep't), *appeal dismissed in part and denied in part*, 74 N.Y.2d 835, 545 N.E.2d 631, 546 N.Y.S.2d 341 (1989).

In this case, the plaintiff Keeney claims that he satisfies all the elements of the test for employment discrimination, namely that Keeney is over the age of forty (protected class);(2) has been in the insurance business for approximately twenty years and therefore is qualified; (3) had his employment terminated, an adverse employment action; and (4) is but one of several Long Island insurance agents, over the age of forty who have suffered the same attempted agency termination for the cause of unacceptable loss ratios which he says are circumstances giving rise to an inference of age discrimination.

Further, the plaintiff asserts that Keeney is an employee of Kemper under the provisions of § 296. In particular the plaintiffs contend that Keeney satisfies the test determining "employee" status as set forth by the court in *State Div. of Human Rights v. GTE Corp.*, 109 A.D.2d 1082, 1083, 487 N.Y.S.2d 234, 235 (4th Dep't 1985). According to the plaintiff, the following factors determine whether an employee/employer relationship exists: (1) the selection an engagement of the servant; (2) the payment of salary or wages; (3) the power of dismissal; and (4) the power and control of the servants conduct. As a result of this test, the plaintiffs allege that an individual can be an employee of the defendant despite that person being on the payroll of another employer through which the individual performed services. Keeney claims that the defendants, by the Agreement selected Keeney's services; exercised the power of control over Keeney's performance, reserved the power of appropriate dismissal; and indirectly, through the Hofmann agency, paid his wages.

The plaintiffs also claim that the defendants' alleged acts of age discrimination were willful and intentional violations of the plaintiff Keeney's equal protection and due process rights guaranteed under the New York State Constitution.

In addition to many other valid grounds for dismissing the Court, the defendants allege that Keeney was not an employee of Kemper which is a requisite to establish a cause of action under section 296. Kemper noted that not only do the plaintiffs fail to allege that Keeney was employed by Kemper, but the Agreement between Hofmann, and Kemper expressly states that the "Agent shall be an independent contractor and noth-

ing herein shall be construed to create the relation of employer and employee between Company and Agent." The defendants state that even if the Agreement were between Kemper and Keeney, rather than Kemper and Hofmann, Keeney would still have no basis for claiming the employee-employer relationship.

In addition the defendants claim that age is not a prohibited classification under the equal protection clause of the New York State Constitution. Moreover, Kemper contends that the plaintiffs' claim of a due process violation must also be dismissed because of the absence of any allegation of State action or involvement. Despite the "flexible standard," in the New York State Constitution, the defendants state that sufficient and meaningful State participation is required to trigger the protection afforded by the due process clause and there are no allegations in the Complaint of any State involvement and, as a result, the due process claim should be dismissed.

In the Court's view, the plaintiffs' claim for employment discrimination pursuant to New York Exec. Law § 296 must fail because there was never an employee/employer relationship between the parties to the agreement. In fact, the Agreement itself states in express and clear language in clause ten as follows:

## INDEPENDENT CONTRACTOR

10. Agent has been independent contractor and nothing herein shall be construed to create the relation of employer and employee between Company and Agent. Agent shall be free to exercise Agent's own judgement as to persons from whom Agent will solicit insurance, the time and place of solicitation and the methods and means of solicitation, subject only to the rules and limits established by this Agreement and by the rules and regulation of Company.

This Court finds that under this clause and the undisputed facts, both plaintiffs are independent contractors and not employees of the defendants, as a matte of law. Therefore, their claim under N.Y. Exec. Law § 296 is insufficient to state a cause of action and is dismissed. Because the Court finds no state action pled in the Complaint, the due process claim fails as well. Accordingly, the defendants' motion to dismiss Count X is granted.

### J. Count XI—Tortious Interference with Contract

The elements of a claim for tortious interference with contractual relations are: (1) the existence of a contract with a third party; (2) the defendants' knowledge of the existence of a contract; (3) the defendants' intentional procurement of the breach of that contract; and (4) damages caused by the breach. *See Foster v. Churchill,* 87 N.Y.2d 744, 749, 642 N.Y.S.2d 583, 586, 665 N.E.2d 153 (1996); *see also Finley v. Giacobbe,* 79 F.3d 1285, 1294 (2d Cir.1996).

The plaintiffs allege that since June 1, 1995, the defendants, acting with malice and in their own interests of furthering their illegal redlining scheme, intentionally interfered with the plaintiffs' insurance expiration contracts with the defendants' insured third parties.

In particular, the plaintiffs allege that: (1) Hofmann has entered into insurance expiration contracts (renewals) with defendants' insured (contracts with third parties); (2) the defendants were aware of these contracts; (3) defendants have issued notices of non-renewal pursuant to the "for cause" termination of the Agreement and thus procured the breach of the expiration contracts; (4) as a direct and proximate cause of the defendants' tortious interference, the plaintiffs suffered the loss of earnings otherwise generated by the renewals.

In opposition, the defendants allege that the plaintiffs' cause of action for tortious interference with contract should be dismissed because the Complaint does not allege that any contract between either of the plaintiffs and a third party has been breached. Kemper states that in order for the plaintiffs to sustain a cause of action for tortious interference with contract, it is axiomatic that there must be breach of that contract by the third party.

The Court takes a different position. In the Court' view, this cause of action must fail because, as stated above, the defendants pos-

sess the right to terminate the agreement as long as not less than 180 days notice is given to the Agency. Because Kemper complied with the 180 day notice rule, they had every right to terminate the agreement. The Court finds that the defendants did not tortiously interfere with any third-party contracts because it was within their right to terminate the agreement. Therefore, the defendants' motion to dismiss Count XI is granted.

### K. Count XII—Tortious Interference With Prospective Business Advantage

To state a claim for tortious interference with prospective economic advantage, the plaintiffs must establish (1) business relations with a third party; (2) the defendant's intentional interference with those business relations; (3) that the defendant acted with the sole purpose of harming the plaintiff or, where the defendant acted to advance its own competing interests or the defendant used dishonest, unfair, or improper means, such a criminal or fraudulent conduct; and (4) an injury to the relationship. *See e.g., Purgess v. Sharrock*, 33 F.3d 134, 141 (2d Cir.1994); *Gruntal & Co., Inc. v. San Diego Bancorp*, 1996 WL 343079, at *2 (S.D.N.Y. June 21, 1996); *G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 768 (2d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 381, 133 L.Ed.2d 304 (1995) (it is "axiomatic that the plaintiff must show that the defendant "intentionally caused [a third party] not to enter into a contractual relationship with [the plaintiff"]).

The plaintiffs contend that they sufficiently plead the necessary elements for a claim of tortious interference with prospective business advantage. In particular, the plaintiffs allege: (1) business relations with third parties;(2) the defendants' intentional interference with those business relations; (3) that the defendants acted to advance their own competing interest (redlining) through fraudulent conduct and a fraudulent termination; and (4) the plaintiffs suffered injury to these business relationships.

The plaintiff claims that as a direct result of the defendants' malicious interference with the plaintiffs' benefits and prospective business advantages that flow from the renewal of Hofmann insurance expiration contracts, the plaintiffs suffered financial loss as well as emotional distress.

In response, the defendants claim that the Court should dismiss this cause of action because the plaintiff have not alleged that Kemper has caused any third-party not to enter into a contractual relationship with the plaintiffs. According to Kemper, it did not cause the third-parties to forego contract renewals with the plaintiffs.

In addition, the defendants assert that the Agreement sets forth in paragraphs 8 and 18 the guidelines that govern the ownership and control of the expiration contracts, as well as the commissions to be paid on such contracts after terminations of the Agreement. Kemper maintains that the plaintiffs cannot claim "tortious interference" with these contracts or with the advantages that flow from their renewal because they have acted in accordance with the specific terms of the agreement.

Similar to the reasoning leading to the dismissal the claim for tortious interference with a contract, this Court finds that this cause of action also is insufficient because the defendants possess the right to terminate the agreement giving no less than as long as 180 days notice. Accordingly, the defendants' motion to dismiss Count XII is granted.

### L. Count XIII—Defamation

■ The plaintiffs allege that in or about June 1995, the defendants maliciously published of and concerning the plaintiff Hofmann, in written correspondence to the plaintiff, Keeney, and allegedly to others in the insurance industry that the defendants were terminating the Agreement due to the plaintiff's "unacceptable loss ratio." In addition, in or about October 1995, the plaintiffs' claim that the defendants stated that the defendants were terminating the agreement due to "unprofitability of [the plaintiffs'] five year [sic] automobile loss ratio."

The plaintiffs contend that the publishing to third parties that the plaintiffs were being terminated because of bad loss ratios, with full knowledge, as admitted by the defendants, that the "loss ratios" were not plaintiffs' responsibility, demonstrates both the

publication and the falsity of the statement. Moreover, the plaintiffs claim that the defendants' attempt to characterize the alleged defamatory statements as mere opinion is unpersuasive. Keeney states that even if the defendants' statements were opinions, they were based on false facts and actionable against a defendant who had knowledge of the falsity of the facts.

In opposition, the defendants claim that the Complaint fails to state a cause of action because it does not allege a "defamatory statement" or publication to a third party. Kemper claims that the alleged statements are not defamatory because they are expressions of pure opinion. The defendants contend that whether or not the Hofmann Agency loss ratio is acceptable to Kemper is a subjective determination made by the defendants. Expressions of pure opinion are not actionable under the law of libel and slander.

The defendants also assert that even if Kemper's statements are not pure opinions, they are not defamatory. The defendants state that because they have not suggested fault on the part of Hofmann, its statement concerning the unacceptability of the loss ratio is not defamatory per se. In addition, the defendants claim that the statement that the plaintiff's five year automobile loss ratio was "unprofitable" is also not defamatory per se because it does not tend to bring Hofmann into business disrepute.

Further, the defendants maintain that in order to state a claim for libel or slander where the statements are not defamatory per se, special damages must be fully and accurately identified with sufficient particularity to identify actual losses. The defendants assert that the plaintiff "merely" set forth that their business has been damaged by the statements and request special damages in an unspecified amount of compensation. The defendant claim that such "nonspecific conclusory allegation do not meet the stringent requirement imposed for pleading special damages. According to the defendants, the plaintiffs have failed to state a cause of action for defamation because they have not alleged that the defendants made defamatory statements and the plaintiffs have not adequately pled special damages.

In addition, the defendants claim that the only person specifically identified as having read the alleged defamatory statements contained in the termination letters is the plaintiff Keeney, the president of Hofmann Agency. Because Kemper had to inform someone at the Hofmann Agency of its intent to terminate the Agreement, it cannot be said that informing the president of that company constitutes publication to a "third party." The defendants further claim that the plaintiffs' allegation that Kemper libeled Hofmann to "others" in the insurance community must be dismissed because "a pleader must name those who have read a libelous publication in order to sufficiently state a cause of action for libel."

In the Court's view, the alleged defamatory written statements made by the defendants in the letters of termination to the plaintiffs are not defamatory as a matter of law. A statement is not defamatory per se unless it "impugn[s] the creditworthiness or basic integrity of the plaintiffs' business. *Christopher Lisa Matthew Policano, Inc. v. North Am. Precis Syndicate, Inc.*, 129 A.D.2d 488, 489, 514 N.Y.S.2d 239, 242 (1st Dep't 1987). The Court finds that the verbiage used by the defendants are merely opinions and are not actionable. In addition, these words do not impugn the business integrity of Hofmann. *Id.* at 489, 514 N.Y.S.2d at 242. The Court finds that the statements made by the defendants are not defamatory as a matter of law.

 In addition, if the statements are not libelous per se special damages must be "fully and accurately identified 'with sufficient particularity to identify actual losses.' When loss of business is claimed, the persons who ceased to be customers must be named and the losses itemized. *Matherson v. Marchello*, 100 A.D.2d 233, 234, 473 N.Y.S.2d 998, 1000–01 (2d Dep't 1984). In this case, the Court finds that complaint does not recite, with the requisite specificity, the special damages sought. Even if their statements were not libelous per se, the non-specific conclusory allegation do not meet the stringent requirements imposed for pleading special damages. Accordingly, based on all the

above reasons, the motion of the defendants to dismiss Count XIII is granted.

### M. *Count XIV—Defamation (Compelled Self-Publication)*

Regarding the plaintiffs' cause of action for defamation by compelled self-publication of the defamatory statements, "a discharged employee may sue for defamation even if an employer made the defamatory statement to no other than the employee if the employer knows, or should know, of circumstances where the employee is later put in a position in which he or she has no reasonable means of avoiding publication of the statement and must repeat such statement; usually when seeking new employment," *Wieder v. Chemical Bank,* 202 A.D.2d 168, 169, 608 N.Y.S.2d 195, 196 (1st Dep't 1994); *see also Lewis v. Equitable Life Assurance Society,* 389 N.W.2d 876 (Minn.1986).

The defendants allege that New York does not recognize a cause of action for "compelled" self-publication, even in the context where an employer knows that the employee has no reasonable means of avoidable publication of the statement and must repeat such statement. The defendants also claim that even if New York did recognize this cause of action, it must fail because the alleged defamatory statements are expressions of opinion not subject to the law of defamation. In addition, Kemper contends that even if the statements are not pure opinion, they are not defamatory on their face and therefore the cause of action must fail as a matter of law.

Moreover, the defendants maintain that even assuming that the statements were actionable, the plaintiffs do not plead facts that suggests how Kemper has compelled them to self-publish" the allegedly defamatory statements. Kemper asserts that it appears from the Complaint that the plaintiffs' republication on any statement made to them was entirely voluntary, and Kemper may not be held liable for any resulting injury.·

The plaintiff contends that the defendants' assertion that any compelled self-publication was voluntary and non-actionable is incorrect. The plaintiff allege that in an attempt to mitigate the damages flowing from the non-renewal of the plaintiffs' renewal contracts, and pursuant to Insurance Law requirements of candor, the plaintiffs are under a duty to disclose to any other insurer that they were terminated for the cause of "unacceptable loss ratios" and "unacceptable profitability of the automobile loss ratios." According to the plaintiff, the impugning characteristics of those statements that they were compelled to self-publish to other insurers, comprise defamatory statements disparing the plaintiffs in their trade or profession. The plaintiffs further contend that contrary to the defendants' assertion, the self-publications were not "merely" voluntary but were required both by the insurance regulations and the necessities of honesty and integrity between an agent and his of her clients or insurers.

The Court finds this cause of action is insufficient. First, as stated above, the Court finds as a matter of law, that the statements made by the defendants as described in the Complaint, are not defamatory. Moreover, the statements made were expressions of opinion which cannot be the basis of a libel cause of action. However, the Court notes that even if the statements were defamatory, New York does not recognize a cause of action for "compelled self-publication." *See Wieder,* 202 A.D.2d at 169, 608 N.Y.S.2d at 196. Accordingly, the defendants' motion to dismiss Count XIV is granted.

### N. *Count XV—Discrimination Under New York State Civil Rights Laws §§ 40–c and 40–d*

Civil Rights Law § 40–c states as follows:

1. All persons within the jurisdiction of this state shall be entitled to the equal protection of the laws of this state or any subdivision thereof.

2. No person shall, because of race, creed, color, national origin, sex, martial status or disability . . . be subjected to any discrimination in his civil rights, or to any harassment, . . . in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision of the state.

Civil Rights Law § 40–d states as follows:

Any person who shall violate any of the provisions of the foregoing section ... shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any court of competent jurisdiction in the county in which the defendant shall reside. In addition, any person who shall violate any of the provisions of the foregoing section shall be deemed guilty of a class A misdemeanor. At or before the commencement of any action under this section, notice thereof shall be served upon the attorney general.

The plaintiffs allege in their Complaint that the defendants' acts of age discrimination were in violation of the New York State's Civil Rights Laws sections 40–c and 40–d. The defendants contend that violation of the Civil Right Law §§ 40–c and 40–d are without merit because these sections only protects persons "on the basis of race, creed, color, national origin, sex, martial status or disability."

The Court agrees with the assertions of the defendants in that the above statute does not include age as a protected class. In addition, the Court notes that the plaintiffs' opposition papers did not even discuss this cause of action. The Court finds that this claim is fatally deficient and the defendants' motion to dismiss Count XVI is granted.

2. *The Court does not grant leave to plead*

The Federal Rules of Civil Procedure provide that "leave [to amend a pleading] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); *see also Gumer v. Shearson, Hammill & Co.,* 516 F.2d 283, 287 (2d Cir.1974). According to the Supreme Court, only "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ... [or] futility of the amendment" will serve to prevent an amendment prior to trial. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *accord Richardson Greenshields Sec., Inc. v. Mui–Hin Lau,* 825 F.2d 647, 653 n. 6 (2d Cir.1987).

Recently, the Second Circuit reiterated that "[t]he district court has discretion whether or not to grant leave to amend, and its discretion is not subject to review on appeal except for abuse of discretion." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (quoting 3 *Moore's Federal Practice* ¶ 15.08[4], at 15–16 (2d ed.1992) (footnotes omitted)); *see also Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 72 (2d Cir.1990). "In exercising its discretion, the district court is required to heed the command of Rule 15(a) to grant leave to amend 'freely ... when justice so requires.'" *Ruffolo,* 987 F.2d at 131 (quoting Fed.R.Civ.P. 15(a)).

In the Court's view, granting leave to replead would be futile as to all the causes of action. The Court finds that, as a matter of law, the plaintiffs cannot replead any valid causes of action that could survive another motion to dismiss. Therefore, the Court declines to grant the plaintiffs leave to amend the Complaint.

## III. *CONCLUSION*

After reviewing the papers submitted by both parties, hearing oral argument, and for the reason set forth above, it is hereby,

ORDERED, that the defendants' motion to dismiss the plaintiffs' cause of action under the Fair Housing Act 42 U.S.C. § 3604, pursuant to Fed.R.Civ.P. 12(b)(6), is granted, and it is further

ORDERED, that the defendants' motion to dismiss the plaintiff's cause of action for fraud in the inducement, pursuant to Fed. R.Civ.P. 12(b)(6), is granted, and it is further

ORDERED, that the defendants' motion to dismiss the plaintiffs' cause of action for fraudulent misrepresentation, pursuant to Fed.R.Civ.P. 12(b)(6), is granted, and it is further

ORDERED, that the defendants' motion to dismiss the plaintiffs' cause of action under the New York General Business Law §§ 349 & 350—Unfair and Deceptive Trade Practices, pursuant to Fed.R.Civ.P. 12(b)(6), is granted, and it is further

ORDERED, that the defendants' motion to dismiss the plaintiffs' cause of action for breach of contract, pursuant to Fed.R.Civ.P. 12(b)(6), is granted and it is further

ORDERED, that the defendants' motion to dismiss the plaintiffs' cause of action for breach of covenant of good faith and fair dealing, pursuant to Fed.R.Civ.P. 12(b)(6), is granted and it is further

ORDERED, that the defendants' motion to dismiss the plaintiffs' cause of actions under the New York Franchise Sales Act, pursuant to Fed.R.Civ.P. 12(b)(6), is granted and it is further

ORDERED, that the defendants' motion to dismiss the plaintiffs' cause of action under New York Executive Law § 296, pursuant to Fed.R.Civ.P. 12(b)(6), is granted, and it is further

ORDERED, that the defendants' motion to dismiss the plaintiffs' cause of action for tortious interference with contract, pursuant to Fed.R.Civ.P. 12(b)(6), is granted, and it is further

ORDERED, that the defendants' motion to dismiss the plaintiffs' cause of action for tortious interference with prospective business advantage, pursuant to Fed. R.Civ. P. 12(b)(6), is granted, and it is further

ORDERED, that the defendants' motion to dismiss the plaintiffs' cause of action for defamation, pursuant to Fed. R.Civ. P. 12(b)(6), is granted, and it is further

ORDERED, that the defendants' motion to dismiss the plaintiffs' cause of action for defamation, compelled self-publication, pursuant to Fed.R.Civ.P. 12(b)(6), is granted, and it is further

ORDERED, that the defendants' motion to dismiss the plaintiffs' cause of action under New York State Civil Rights Laws §§ 40–c and 40–d, pursuant to Fed.R.Civ.P. 12(b)(6), is granted, and it is further

ORDERED, that the Complaint is dismissed in its entirety and the Clerk of the Court is directed to close this case.

SO ORDERED.